BERNSTEIN LITOWITZ BERGER
    & GROSSMANN LLP
BLAIR A. NICHOLAS (Bar No. 178428)
(blairn@blbglaw.com)
TIMOTHY A. DELANGE (Bar No. 190768)
(timothyd@blbglaw.com)
BRETT M. MIDDLETON (Bar No. 199427)
(brettm@blbglaw.com)
MATTHEW P. JUBENVILLE (Bar No. 228464)
(matthewj@blbglaw.com)
PAUL M. JONNA (Bar No. 265389)
(paulj@blbglaw.com)
12481 High Bluff Drive, Suite 300
San Diego, CA 92130
Tel:    (858) 793-0070
Fax:   (858) 793-0323
        -and-
DAVID L. WALES
JAI K. CHANDRASEKHAR
LAUREN A. MCMILLEN
1285 Avenue of the Americas
New York, NY 10019
Tel:    (212) 554-1400
Fax:   (212) 554-1444

*Counsel for Plaintiff*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re COUNTRYWIDE FINANCIAL CORP. MORTGAGE-BACKED SECURITIES LITIGATION CASES | Case No. 11-ML-02265-MRP (MANx) **PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS** Date/Time:  2/13/2012 at 11:00 a.m. Date/Time:  2/14/2012 at 1:00 p.m. Courtroom: 12 Judge:      Hon. Mariana R. Pfaelzer |
| SEALINK FUNDING LIMITED, Plaintiff, v. COUNTRYWIDE FINANCIAL CORPORATION, *et al.*, Defendants. | Case No. 11-CV-08896-MRP (MANx) |

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................... ii

I.      INTRODUCTION ................................................................. 1

II.     SEALINK WAS ASSIGNED THE CLAIMS AT ISSUE ........................... 3

III.    ARGUMENT .......................................................................... 6

        A.      Sealink Is The Proper Plaintiff ......................................... 6

                1.      Sealink Was Assigned These Claims Through Its
                        Purchase Of The MBS From The SPVs ........................ 7

                2.      The Guarantees And Loans Have No Impact On
                        Standing ........................................................... 9

        B.      Sealink's Claims Are Timely ........................................ 11

                1.      Irish Law Applies Under  New York's Borrowing
                        Statute ............................................................ 11

                        a)      The Economic Injuries Occurred In Ireland ........... 12

                        b)      Sealink's Claims Are Timely Under Irish Law ......... 13

                2.      Defendants' Manufactured Attempt To Apply
                        German Law Fails ................................................ 13

                3.      Sealink's Claims Are Timely Even If German Law
                        Applies ............................................................ 15

IV.     CONCLUSION .................................................................... 18

# TABLE OF AUTHORITIES

Case              Page

*Allstate Ins. Co. v. Countrywide Fin. Corp.*,
   No. 2:11-cv-05236-MRP, 2011 WL 5067128 (C.D. Cal. Oct. 21, 2011) ..1, 3, 15

*Appel v. Kidder, Peabody & Co. Inc.*,
   628 F. Supp. 153 (S.D.N.Y. 1986) ....................................................................12

*Arlington Heights v. Metro. Hous. Dev. Corp.*,
   429 U.S. 252, 97 S. Ct. 555, 50 L.Ed.2d 450 (1977)...........................................9

*Baena v. Woori Bank*,
   No. 05 Civ. 7018 (PKC), 2006 WL 2935752 (S.D.N.Y. Oct. 11, 2006) ..........13

*Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A*,
   No. 93 CIV. 6876 (LMN), 2001 WL 492363 (S.D.N.Y. May 9, 2001).............11

*Banque Arabe et Internationale D'Investissement v. Maryland Natl. Bank*,
   57 F.3d 146 (2d Cir. 1995) ..................................................................................7

*Bullfrog Films, Inc. v. Wick*,
   847 F.2d 502 (9th Cir. 1988) ...............................................................................7

*Cal. Pharmacy Mgmt., LLC v. Zenith Ins. Co.*,
   669 F. Supp. 2d 1152 (C.D. Cal. 2009) ...............................................................8

*China Dev. Indus. Bank v. Morgan Stanley & Co. Inc.*,
   86 A.D.3d 435, 927 N.Y.S. 2d 52 (2011)..........................................................17

*Chiste v. Hotels.com L.P.*,
   756 F. Supp. 2d 382 (S.D.N.Y. 2010) ...............................................................11

*Cnty. of Ulster v. Highland Fire Dist.*,
   2006 NY slip op. 3666 (N.Y. App. 2006) .........................................................17

*Epstein v. Haas Sec. Corp.*,
   731 F. Supp. 1166 (S.D.N.Y. 1990) ..................................................................14

*Fallon v. Wall St. Clearing Co.*,
   182 A.D.2d 245, 586 N.Y.S. 2d 953 (1992).......................................................9

*Glavey v. Aer Lingus*,
   No. 98 Civ. 7003 (LAP), 1999 WL 493350 (S.D.N.Y. July 12, 1999).............13

*Global Fin. Corp. v. Triarc Corp.*,
    93 N.Y.2d 525 (N.Y. 1999) ...................................................................11, 12, 14

*Gordon & Co. v. Ross*,
    63 F. Supp. 2d 405 (S.D.N.Y. 1999) ......................................................11, 12, 14

*Gorlin v. Bond Richman & Co.*,
    706 F. Supp. 236 (S.D.N.Y. 1989) ..............................................................11, 14

*Intellivision v. Microsoft Corp.*,
    784 F. Supp. 2d 356 (S.D.N.Y. 2011) ...............................................................14

*Katz v. Goodyear Tire & Rubber Co.*,
    737 F.2d 238 (2d Cir. 1984) ..............................................................................17

*Kerrigan v RM Assocs., Inc.*,
    2008 NY slip op. 33322U (N.Y. Sup. Ct. Dec. 9, 2008) ...................................17

*Lama Holding Co. v. Smith Barney Inc.*,
    88 N.Y.2d 413 (N.Y. 1996) .................................................................................9

*Lang v. Paine, Webber, Jackson & Curtis, Inc.*,
    582 F. Supp. 1421 (S.D.N.Y. 1984) .......................................................13, 14, 17

*MBIA Ins. v. Countrywide Home Loans*,
    No. 602825/08, slip op. (Super. Ct. N.Y. Cnty. Jan. 3, 2012).................2, 10, 12

*Merck & Co., Inc. v. Reynolds*,
    130 S. Ct. 1784 (2010) .......................................................................................16

*Milin Pharmacy, Inc. v. Cash Register Sys., Inc.*,
    173 A.D.2d 686 (N.Y. App. 1991) ....................................................................17

*Perkumpulan Investor Crisis Ctr. Dressel-WBG v. Regal Fin. Bancorp, Inc.*,
    781 F. Supp. 2d 1098 (W.D. Wash. 2011) ...........................................................7

*Pricaspian Dev. Corp. (Texas) v. Royal Dutch Shell, plc*,
    No. 08 Civ. 9726 (DLC), 2009 WL 1564110 (S.D.N.Y. June 3, 2009)............11

*Pro Bono Inv., Inc. v. Gerry*,
    No. 03 Civ 4347 (JGK), 2008 WL 4755760 (S.D.N.Y. Oct. 29, 2008)..............8

*Proforma Partners, L.P. v. Skadden Arps Slate Meagher & Flom LLP*,
    720 N.Y.S.2d 139 (1st Dept. 2001) ...................................................................11

*Sager v Friedman*,
   270 N.Y. 472, 1 N.E.2d 971 (N.Y. 1936)........................................................10

*Santiago v. 1370 Broadway Assocs., L.P.*,
   96 N.Y.2d 765 (2001) ....................................................................................18

*Sec'y of State of Md. v. Joseph H. Munson Co.*,
   467 U.S. 947, 104 S. Ct. 2839, 81 L.Ed.2d 786 (1984) ......................................9

*Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*,
   554 U.S. 269, 128 S. Ct. 2531, 171 L. Ed. 424 (2008) ("*Sprint*") ..............passim

*Stewardship Credit Arbitrage Fund LLC v. Charles Zucker Culture Pearl Corp.*,
   No. 600634/2010, 2011 WL 1744217 (N.Y. Sup. May 4, 2011)..........................9

*Stichting Pensioenfonds ABP v. Countrywide Fin.Corp.*,
   No. 10-cv-07275 MRP, 2011 WL 3558173 (C.D. Cal. Aug. 9, 2011) ....3, 15, 16

*Studio & Partners, s.r.l. v. KI*,
   No. 06-C-0628, 2008 WL 426496 (E.D. Wis. Feb. 14, 2008) ...........................16

*Universal-MCA Music Publ'g v. Bad Boy Entm't, Inc.*,
   No. 601935/02, 2003 WL 21497318 (N.Y. Sup. June 18, 2003).......................17

*Valley Forge Christian Coll. v. Ams. United For Separation of Church and State*,
   454 U.S. 464, 70 L. Ed.2d 700, 102 S. Ct. 752 (1982) ........................................7

*Warth v. Seldin*,
   422 U.S. 490, 95 S. Ct. 2197, 45 L.Ed.2d 343 (1975)........................................9

**STATUTES, RULES & REGULATIONS**

C.P.L.R. § 202..................................................................................................11, 12

Federal Rules of Civil Procedure
   Rule 9(a)..............................................................................................................6
   Rule 44.1 ...........................................................................................................13

Plaintiff Sealink Funding Limited ("Sealink" or "Plaintiff") submits this memorandum of law in opposition to the Countrywide Defendants' motions to dismiss the Complaint Plaintiff filed against Countrywide Financial Corporation ("Countrywide Financial"), Countrywide Home Loans, Inc. ("Countrywide Home"), Countrywide Securities Corporation ("Countrywide Securities"), CWALT, Inc., CWABS, Inc., CWHEQ, Inc., Angelo Mozilo, David A. Sambol (collectively, "Countrywide" or the "Countrywide Defendants"), Bank of America Corp., BAC Home Loans Servicing, L.P., and NB Holdings Corp. (collectively, the "Bank of America Defendants," and together with the Countrywide Defendants, "Defendants").

## I.  **INTRODUCTION**

Countrywide epitomizes the fraud and wrongdoing that infected the United States mortgage industry. Between 2005 and 2007, the Countrywide Defendants originated hundreds of billions of dollars of residential loans, packaged them into mortgage-backed securities ("MBS") and sold them to unsuspecting investors. In order to provide fuel for their massive securitization machine – and in stark contrast to the representations in the Offering Documents – the Countrywide Defendants disregarded underwriting and appraisal standards and issued loans to any borrower, regardless of their credit profile, ability to pay, or the value of the mortgaged property.

Not surprisingly, the MBS were not worth what investors paid for them, and the prices plummeted as the underlying loans suffered higher than expected delinquency, default and foreclosure rates. Investors – including Sealink here – filed numerous class and individual actions asserting various common law and statutory claims. This Court recently sustained fraud claims against these same Defendants based on allegations similar to those here. *See, e.g., Allstate Ins. Co. v.*

*Countrywide Fin. Corp.*, No. 2:11-cv-05236-MRP (MANx), 2011 WL 5067128, at *18 (C.D. Cal. Oct. 21, 2011).

Now, the Countrywide Defendants attempt to escape liability for their fraud with two meritless procedural arguments.  First, they contend that Sealink lacks standing to pursue the claims at issue.  Defendants are wrong.  The Sale and Purchase Agreements ("SPAs") pursuant to which Sealink acquired the Countrywide MBS transferred all rights and title to the MBS, including an assignment of the right to pursue the claims asserted here.  The Supreme Court recently recognized that, in the case of an assignment, standing is analyzed from the assignor's perspective.  *See Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 285, 128 S. Ct. 2531, 171 L. Ed. 424 (2008) ("*Sprint*").  Defendants do not – and cannot – challenge that the assignors – the SPVs that originally purchased the Countrywide MBS – suffered redressable injuries.  Sealink stands in the shoes of the SPVs and has standing to pursue the claims here.

Likewise, Defendants' claim that Sealink has not suffered an injury due to the existence of certain guarantees and loans from German banks is incorrect.  The guarantees only compensate Sealink for actual payment defaults, not the full measure of damages for a fraud claim.  *See MBIA Ins. v. Countrywide Home Loans*, No. 602825/08, slip op. at 14 (Super. Ct. N.Y. Cnty. Jan. 3, 2012) (damage for New York common law fraud claim is the difference between the price paid for the MBS and the true value of such MBS at the time of purchase).  Further, the identity of a plaintiff's lender, insurer or sponsor is immaterial to the standing issue.  *Sprint,* 554 U.S. at 287.

Second, Defendants' manufactured assertion that German law somehow applies to the statute of limitations is wrong.  The SPVs that originally purchased the MBS, and Sealink, are residents of Ireland.   The economic impact of

Defendants' fraudulent conduct was felt in Ireland.    Sealink's claims are unquestionably timely under Ireland's six year statute of limitations.

Sealink's claims are even timely if – as Defendants contend – German law applies.  Under German law, the statute of limitations is three years and begins to run *at the end of the year* in which the claim arose.   The German statute of limitations is only triggered, however, when a plaintiff either actually knew of the circumstances giving rise to its claims or was ***grossly negligent*** in failing to obtain such knowledge.  Under a less stringent notice standard, this Court previously held that reasonable investors could not have known about the fraud at Countrywide relating to the MBS until, at the earliest, early 2008.  *Stichting Pensioenfonds ABP v. Countrywide Fin.Corp.*, No. 10-cv-07275 MRP (MANx), 2011 WL 3558173, at *8, *11 (C.D. Cal. Aug. 9, 2011); *see also Allstate Ins. Co.*, 2011 WL 5067128, at *13.   Using this same date, the German statute of limitations began to run on December 31, 2008 (the end of the year in which the claim arose).  The Complaint was filed on September 29, 2011 – well within the three year limit.

In short, Sealink has standing to assert the claims here, the Complaint was timely filed, and the Countrywide Defendants' motion should be denied.

## II.    SEALINK WAS ASSIGNED THE CLAIMS AT ISSUE

Landesbank Sachsen Girozentrale ("Sachsen LB") was a German bank founded in 1992.  In 1999, Sachsen LB created Sachsen LB Europe Plc. ("Sachsen Europe"), a public limited company incorporated under the laws of Ireland, which maintained its principal place of business at Ninth Floor, Block A, 1 George's Quay, Dublin 2, Ireland.  *See* Declaration Of Sven Peterson In Support Of Plaintiff's Opposition To Defendants' Motions To Dismiss ("Petersen Decl."), ¶2. Sachsen Europe's primary business purpose was to facilitate the purchase of asset backed securities, including MBS.  *Id.*

In furtherance of this objective, in 2004, Sachsen Europe was involved in creating Ormond Quay Funding Plc. ("Ormond Quay"), a company incorporated under the laws of Ireland, whose registered office was at Fourth Floor, Hanover Building, Windmill Lane, Dublin 2, Ireland. Petersen Decl., ¶3. Later, Sachsen Europe was involved in creating other similar SPVs for the purpose of purchasing MBS, including Sachsen Funding I Ltd. ("Sachsen Funding"), a company incorporated under the laws of Ireland, whose registered office was at Fifth Floor, 75 St. Stephen's Green, Dublin 2, Ireland. Petersen Decl., ¶7. Sachsen Europe was also involved in creating additional SPVs, including Castleview Asset Management Ltd. ("Castleview 1"), Castleview 2 Asset Management Ltd. ("Castleview 2") and Castleview 3 Asset Management Ltd. ("Castleview 3") (together with Ormond Quay and Sachsen Funding, the "SPVs"). Petersen Decl., ¶¶4-6, 8-10.

The SPVs did not have employees. Petersen Decl., ¶11. Rather, Sachsen Europe employed the traders, analysts and other employees who performed the analysis and purchase of the MBS for these SPVs. *Id*. All operational activities of the SPVs, including the purchase of MBS, were conducted through Sachsen LP Europe at Sachsen Europe's principal place of business in Dublin, Ireland. *Id*. Between 2005 and 2007, the SPVs purchased approximately €17.3 billion in MBS, including the $1.6 billion in Countrywide MBS at issue here.[1]

As a result of the misrepresentations and omissions about the quality and character of the Countrywide MBS, the prices the SPVs paid for the Countrywide MBS were far in excess of their true value at the time of purchase. ¶¶7-8, 112, 114. In fact, the Countrywide MBS quickly suffered higher than expected

---

[1] ¶2. References to "¶" throughout are to paragraphs of the Complaint.

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTIONS TO DISMISS
Case No. 11-CV-08896-MRP (MANx)

delinquency, default and foreclosure rates, and subsequently suffered severe downgrades by the rating agencies.  ¶¶6-8, 101, 119.

In June 2008, all the MBS held by the SPVs, including the Countrywide MBS at issue here, were sold to Sealink, a newly-created Irish limited company established to receive, hold and manage the MBS.  ¶12.  Sealink maintains offices in Dublin, Ireland at First Floor, 7 Exchange Place IFSC.  Additionally, it has three Directors, each of whom is Irish.  *See* Defendants' Request For Judicial Notice, ECF No. 39 ("Defendants' RJN"), Ex. 116 at 1.  Sealink's financial statements are audited in accordance with accounting standards generally accepted in Ireland and comply with the Irish Companies Acts of 1963 to 2009.  *Id.* at 2.

The SPVs sold Sealink the MBS pursuant to a series of Sale and Purchase Agreements ("SPAs").  *See* Declaration of Sue Millar ("Millar Decl."), ¶¶4-8, Exs. A-E.  The SPAs stated that the SPVs "with full title guarantee and as beneficial owner hereby agree[] to sell, and the Purchaser [Sealink] hereby agrees to purchase," all MBS in the SPVs' portfolios, including the Countrywide MBS at issue.  Millar Decl., ¶12.  The SPAs, "and all matters arising or connected with them" are "governed by and construed in accordance with the laws of England and Wales."  Millar Decl., ¶14.  As a matter of English law, the SPAs transferred all rights of the SPVs relating to the Countrywide MBS at issue, to Sealink.  Millar Decl., ¶15.  This transfer included an assignment of the right to pursue the claims sserted herein.  *Id.*

To fund the MBS purchases, Sealink obtained approximately €15.8 billion in loans from German banks including Landesbank Baden-Wurttemberg (€8.2 billion, junior loan) and a pool of Landesbanken (€7.6 billion, senior loan).  Defendants' RJN, Ex. 116 at 12.  The loans require periodic payments of principal and interest, and mature in June 2020.  *Id.* at 9.  As part of the financing arrangement, Sealink pays the Free State of Saxony ("Saxony") for a guarantee on up to €2.75 billion in

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTIONS TO DISMISS
Case No. 11-CV-08896-MRP (MANx)

actual payment defaults (*i.e.*, realized principal and interest payment shortfalls) that the MBS portfolio incurs. *Id.* at 12. The guarantee does not cover the difference between the amount paid and the value of the Countrywide MBS. *Id*.

When payment defaults occur, Sealink submits the losses to Saxony for payment under the guarantee. If Saxony agrees with the calculation, Saxony remits payment directly to Sealink. Thereafter, Sealink distributes the payments to its creditors according to their financing priority (*i.e.*, the senior loans take priority over the junior loans). *Id.* at 10.

## III.   ARGUMENT

### A.   Sealink Is The Proper Plaintiff

Defendants contend that Sealink lacks standing to bring this action because it has not suffered an "injury in fact" and that Sealink is attempting to assert the legal rights of third parties. Countrywide Defendants' Motion To Dismiss, ECF No. 37-1, ("Mot.") at 67-68. Defendants are mistaken. Sealink was assigned the claims above, stands in the shoes of the injured SPVs and has adequately alleged that it is the proper party to pursue the claims at issue. ¶12; *see also* Fed. R. Civ. P. 9(a) ("[i]t is not necessary to aver the capacity of a party to sue or be sued or the authority of a party to sue or be sued in a representative capacity"); Wright & Miller § 1292 ("Under [Rule 9(a)], the fact that a plaintiff, defendant, third-party litigant, or intervenor is participating in the action as a corporation, partnership, administrator, guardian, trustee, or other representative need not be pleaded."). Similarly, the guarantees and loans that Defendants cite have no impact on the standing inquiry because, among other things, the guarantees do not provide a guarantee for all recoverable damages related to Defendants' fraud.

### 1. Sealink Was Assigned These Claims Through Its Purchase Of The MBS From The SPVs

The SPVs, who assigned their claims to Sealink, meet the Ninth Circuit's test for Article III standing.[2]  *Sprint Communications Co. v. APCC Services, Inc.*, a recent Supreme Court decision, is instructive.   554 U.S. at 285-287.   There, payphone operators assigned their claims to "aggregators," who brought suit on their behalf.  *Id.* at 271-72.  The Court recognized that "the owner of a legal claim may assign the claim to a third party, and that the third party thereafter enjoys the right to invoke the jurisdiction of the United States courts in his or her own name." *Perkumpulan Investor Crisis Ctr. Dressel-WBG v. Regal Fin. Bancorp, Inc.*, 781 F. Supp. 2d 1098, 1103 n.1 (W.D. Wash. 2011) (discussing *Sprint*).

Here, Sealink purchased the Countrywide MBS at issue from the SPVs.  ¶¶2, 8, 12.  The applicable SPAs expressly state:  "[t]he Seller with full title guarantee and as beneficial owner hereby agrees to sell, and the Purchaser hereby agrees to purchase, each Asset at a price equal to the relevant Asset Purchase Price, on the terms and subject to the conditions of this Agreement."  *See* Millar Decl., ¶¶4-8. Significantly, "assets" is defined to include all "present and future properties, revenues and rights of every description."   Millar Decl., ¶13.   These "assets" include the assignment of the right to pursue claims the SPVs held in connection with their purchase of the RMBS.  *See id.* at ¶15; *see also Banque Arabe et Internationale D'Investissement v. Maryland Natl. Bank,* 57 F.3d 146, 152 (2d Cir. 1995) (holding that assignee could bring contract and tort claims held by assignor,

---

[2]  In the Ninth Circuit, Article III standing requires that a plaintiff show: (1) that she or he "'personally has suffered some actual or threatened injury' as a result of defendant's conduct, (2) that the injury 'fairly can be traced to the challenged action', and (3) that the injury 'is likely to be redressed by a favorable decision.'" *See Bullfrog Films, Inc. v. Wick*, 847 F.2d 502, 506 (9th Cir. 1988) quoting *Valley Forge Christian Coll. v. Ams. United For Separation of Church and State*, 454 U.S. 464, 472, 70 L. Ed.2d 700, 102 S. Ct. 752 (1982).

even if assignment did not explicitly assign such claims); *see also Pro Bono Inv., Inc. v. Gerry*, No. 03 Civ 4347 (JGK), 2008 WL 4755760, at *16–17 (S.D.N.Y. Oct. 29, 2008) (transfer or assignment of assets also encompassed transfer or assignment of related claims).

In *Sprint*, the Court highlighted that, in the context of an assignment, although the assignee is the real party in interest, it is the injury originally suffered – *i.e.*, the assignor's injury – that is relevant for Article III purposes.  The Court found Article III standing based upon an assignment, stating:

> [T]he aggregators are suing based on injuries **originally suffered by third parties.**  But the payphone operators assigned to the aggregators all **"rights, title and interest"** in claims based on those injuries.  Thus, in the litigation before us, the aggregators assert what are, due to that transfer, **legal rights of their own.**   The aggregators, in other words, are asserting first-party, not third-party, legal rights.

*Sprint,* 554 U.S. at 289-290 (emphasis added).

Here, Sealink is asserting its own legal rights as the assignee (not the rights of third parties) and has standing to maintain this action for fraud based on the injuries the SPVs suffered.   *See Sprint*, 554 U.S. at 285-288; *see also Cal. Pharmacy Mgmt., LLC v. Zenith Ins. Co.*, 669 F. Supp. 2d 1152, 1165-1167 (C.D. Cal. 2009) (standing upheld for plaintiff despite vague allegations of assignment of claims by contracting physicians to plaintiff and despite the fact that losses were suffered by the contracting physicians and not the plaintiff).  The SPVs purchased approximately $1.6 billion worth of Countrywide MBS in 30 offerings between 2005 and 2007, in reliance on the Offering Documents and at prices in excess of the MBS' true value.   ¶¶2, 119-20.   These losses are directly traceable to Defendants' fraudulent conduct, which included false representations and omissions regarding Countrywide's underwriting standards and the nature of the

mortgage loans underlying the MBS.   ¶¶112-18.   Finally, the causes of action asserted herein request both compensatory and punitive damages and will redress the losses resulting from Defendants' fraudulent conduct.[3]   Indeed, fraud claims can be (and often are) brought by assignees, and "it is unnecessary to analyze whether [the assignees] also have standing to bring the claims directly" because "the assignee steps into the shoes of the assignor." *Stewardship Credit Arbitrage Fund LLC v. Charles Zucker Culture Pearl Corp.*, No. 600634/2010, 2011 WL 1744217, at *5 (N.Y. Sup. May 4, 2011) *citing Fallon v. Wall St. Clearing Co.*, 182 A.D.2d 245, 249, 586 N.Y.S. 2d 953 (1992); *see also Sprint*, 554 U.S. at 286 (noting that assignees have standing to bring claims for fraud based on injuries suffered by the assignor).

In short, all elements of Article III are satisfied and Sealink therefore has standing to pursue all claims asserted.  *See Sprint* at 286-289.

## 2.   The Guarantees And Loans Have No Impact On Standing

Under New York law, the measure of damages as a result of fraud is the "difference between the value of the bargain which a plaintiff was induced by fraud to make and the amount or value of the consideration exacted as the price of the bargain." *Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 421 (N.Y. 1996) quoting *Sager v Friedman*, 270 N.Y. 472, 481, 1 N.E.2d 971 (N.Y. 1936)

---

[3] Defendants attempt to invoke certain "prudential principles" adopted in other decisions that precluded jurisdiction – even when Article III standing existed – is inapposite.  *See* Mot. at 67-68.  In those cases, plaintiffs were not assignees and were seeking to assert the legal rights of others.  *See Sprint*, 554 U.S. at 289 (referring to the same cases cited by the Countrywide Defendants: *Warth v. Seldin*, 422 U.S. 490, 501, 95 S. Ct. 2197, 45 L.Ed.2d 343 (1975); *Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 263, 97 S. Ct. 555, 50 L.Ed.2d 450 (1977); and *Sec'y of State of Md. v. Joseph H. Munson Co.*, 467 U.S. 947, 955, 104 S. Ct. 2839, 81 L.Ed.2d 786 (1984)).

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTIONS TO DISMISS
Case No. 11-CV-08896-MRP (MANx)

("the true measure of damage is indemnity for the actual pecuniary loss sustained as the direct result of the wrong" or what is known as the "out-of-pocket" rule); *see also MBIA*, No. 602825/08, slip op. at 14.

Defendants' contention that the German entities will bear all losses arising from the MBS portfolio is wrong. The "guarantee" that Defendants rely exclusively on covers only actual payment shortfalls, not losses resulting from fraud. Mot. at 68-69. Here, Sealink seeks damages, not just for actual payment shortfalls, but for all compensatory damages, including the difference between the price the SPVs paid and the true value of the MBS.[4]

Additionally, Defendants' claim that "all losses made by [Sealink] will ultimately be borne by the loan holders" misses the point. Mot. at 68-69. Essentially, Defendants argue that a corporation (*e.g.*, Sealink) should not be permitted jurisdiction in federal court if its creditors or investors (*e.g.,* the German banks) potentially could benefit from the results of the action. *Sprint* rejected a similar argument:

> But federal courts routinely entertain suits which will result in relief
> ***for parties that are not themselves directly bringing suit***. Trustees
> bring suits to benefit their trusts; guardians *ad litem* bring suits to
> benefit their wards; receivers bring suit to benefit their receiverships;
> assignees in bankruptcy bring suit to benefit bankrupt estates;
> executors bring suit to benefit testator estates; and so forth.

554 U.S. at 287-288.

Here, Sealink, as a result of the assignment from the SPVs, is the company with the right to assert the claims in this lawsuit. As the Supreme Court recognized in *Sprint*, what Sealink does with lawsuit proceeds is immaterial to

---

[4] Sealink also seeks punitive damages for the alleged fraud – a remedy the German guarantees do not cover.

standing.  *See Sprint*, 554 U.S. at 287 ("What does it matter what the [plaintiffs] do

with the money afterward?").

### B.   Sealink's Claims Are Timely

#### 1.   Irish Law Applies Under
New York's Borrowing Statute

New York's borrowing statute requires that claims brought by a non-New

York plaintiff that accrue outside of New York must be timely under the

limitations periods of both New York and the jurisdiction where the cause of action

accrued.  *See* N.Y. C.P.L.R. § 202.  Causes of action "accrue" where the "injury is

sustained."  *Gordon & Co. v. Ross*, 63 F. Supp. 2d 405, 408 (S.D.N.Y. 1999).

The law is well settled: when, as here, an alleged injury is "purely

economic," the place of injury is where the plaintiff resides.  *See Global Fin. Corp.

v. Triarc Corp.*, 93 N.Y.2d 525, 529-30 (N.Y. 1999); *see Gorlin v. Bond Richman

& Co.*, 706 F. Supp. 236, 240 (S.D.N.Y. 1989) (holding that plaintiff's cause of

action accrued in Connecticut – where plaintiff resided – and rejecting argument

that the injury occurred in New York because the accounts were in New York and

because the fraud was committed in New York); *Gordon & Co.*, 63 F. Supp. 2d at

408 (holding that plaintiff's place of residence (Massachusetts) was the place of

injury even though the loss was arguably suffered in New York); *see also

Pricaspian Dev. Corp. (Texas) v. Royal Dutch Shell, plc*, No. 08 Civ. 9726 (DLC),

2009 WL 1564110, at *8 (S.D.N.Y. June 3, 2009) (corporations sustain economic

injuries where they are incorporated and have offices).[5]  Courts have held that N.Y.

---

[5] *See also Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A*, No. 93 CIV.
6876 (LMN), 2001 WL 492363, at *4 (S.D.N.Y. May 9, 2001) (holding that a tort
resulting in purely economic injury accrued at respective places of residence);
*Proforma Partners, L.P. v. Skadden Arps Slate Meagher & Flom LLP*, 720
N.Y.S.2d 139 (1st Dept. 2001)(same); *Chiste v. Hotels.com L.P.*, 756 F. Supp. 2d
382, 410 (S.D.N.Y. 2010) ("Because Sidener's injury is economic . . . his causes of

C.P.L.R. § 202 was "designed to add clarity to the law and to provide the certainty of uniform application to litigants" which "is better served by a rule requiring the *single determination of a plaintiff's residence* than by a rule dependent on a litany of events." *Global Fin. Corp.*, 93 N.Y.2d at 528-29 (emphasis added); *Gordon & Co.*, 63 F. Supp. 2d at 408-09.

### a)    The Economic Injuries Occurred In Ireland

Here, the alleged injuries – the difference in value of the MBS from the prices paid – are purely economic. *See, e.g.,* ¶¶12, 119-20.  The SPVs that initially purchased the $1.6 billion for the Countrywide MBS at issue are all Irish entities. ¶2; Petersen Decl., ¶¶3-7.  All operational activities of the SPVs, including the purchase of MBS, were conducted through Sachsen Europe at its principal place of business in Dublin, Ireland.   Petersen Decl., ¶11. The economic injuries thus occurred in Ireland the moment the SPVs purchased the Countrywide MBS.  *See MBIA*, No. 602825/08, slip op. at 14 ("fraud is complete when a misrepresentation is made that induces a party to take action and that party suffers damages as a result").  Consequently, the SPVs, who assigned their claims to Sealink, "became poorer" in Ireland as a result of Defendants' wrongful conduct.  *See Appel v. Kidder, Peabody & Co. Inc.*, 628 F. Supp. 153, 156 (S.D.N.Y. 1986) ("the thrust of the inquiry" for purposes of determining where the injury occurred under New York's borrowing statute is "'who became poorer, and where did they become poorer' as a result of the conduct complained of"). Therefore, under the New York borrowing statute, the injuries occurred in Ireland and Irish law applies.

action accrued in Wisconsin – where he resides and where he made his reservation.").

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTIONS TO DISMISS
Case No. 11-CV-08896-MRP (MANx)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### b) Sealink's Claims Are Timely Under Irish Law

Defendants do not contend, nor could they, that Sealink's claims are untimely under Irish law.[6]   Under Irish law, actions based on tort must be commenced within six years from the date on which the cause of action accrued. Statute of Limitations Act 1957 (Act No. 6/1957) (Ir.), *available* at http://www.irishstatutebook.ie/1957/en/act/pub/0006/index.html; *see also Glavey v. Aer Lingus*, No. 98 Civ. 7003 (LAP), 1999 WL 493350, at *6 (S.D.N.Y. July 12, 1999) (referencing Ireland's six year statute of limitations for tort claims).   Where the action is based on fraud, the period of limitations does not begin to run until the fraud is discovered or could "with reasonable diligence" have been discovered. Statute of Limitations Act 1957 at Section 71.   Here, the Complaint was filed on September 29, 2011, well within the six year statute of limitations.

### 2. Defendants' Manufactured Attempt To Apply German Law Fails

Defendants contend that German law should apply.   In support, Defendants rely on a "limited" and "extremely rare" exception to the general rule, articulated in *Lang v. Paine, Webber, Jackson & Curtis, Inc.*, 582 F. Supp. 1421 (S.D.N.Y. 1984).   The "*Lang* exception" provides that "where a plaintiff 'maintain[s] [a] separate financial base' and where the impact of the financial loss is felt at that location, it may constitute an alternative place of injury."   *Baena v. Woori Bank*, No. 05 Civ. 7018 (PKC), 2006 WL 2935752, at *5-8 (S.D.N.Y. Oct. 11, 2006) (explaining and summarizing the "*Lang* exception" and holding that, although the plaintiff "engaged in activities in South Korea and South Korea is the site of events underlying all of plaintiff's causes of action, the economic impact of the injury was

---

[6] Under Federal Rule of Civil Procedure 44.1, Sealink hereby gives notice of its intent to raise an issue about Irish law.  *See* Fed. R. Civ. P. 44.1.

ultimately felt . . . in Belgium where the company resided."). Defendants' contention is meritless.

Here, the SPVs and Sealink reside and conduct business principally in Ireland, and none maintain a financial base elsewhere. On that basis alone, the "extremely rare" and "limited" *Lang* exception is inapplicable.[7] Indeed, New York's borrowing statute was "designed to add clarity to the law and to provide the certainty of uniform application to litigants" which "is better served by a rule ***requiring the single determination of a plaintiff's residence*** than by a rule dependent on a litany of events." *Global Fin. Corp.*, 93 N.Y.2d at 528-29; *Gordon & Co.*, 63 F. Supp. 2d at 408-09 (emphasis added).

Nevertheless, Defendants contend that the injury incurred in Germany because, German banks, "hold the financial interest in its assets." Mot. at 71. This contention is factually incorrect. The German banks are Sealink's lenders. It is the residence of the entity that ***suffered the loss*** that is instructive, not the residence of those that lend the entity money or insure it. *See, e.g., Gordon & Co.*, 63 F. Supp. 2d at 408 (courts regularly hold that the place of accrual for borrowing statute purposes is where the plaintiff resides, regardless of where securities accounts are maintained); *Gorlin*, 706 F. Supp. at 240. Here, Sealink, by virtue of the

---

[7] Defendants' reference to *Intellivision v. Microsoft Corp.*, 784 F. Supp. 2d 356, 369-70 (S.D.N.Y. 2011) is unavailing. There, the court noted that the plaintiffs (a company and its three principals) entered into a joint venture agreement which explicitly provided that its principal place of business was Connecticut, even though the individual plaintiffs resided elsewhere. *Id.* at 370.

In *Epstein v. Haas Sec. Corp.*, 731 F. Supp. 1166, 1178-79 (S.D.N.Y. 1990), the court disregarded the plaintiffs' Pennsylvania and New Jersey residences for purposes of determining where the injury occurred under New York's borrowing statute in order to apply ***the more favorable*** New York statute of limitations and because plaintiff's "entire life savings was transferred to her account in New York." *Id.* at 1179.

assignments from the SPVs, holds the financial interests in the Countrywide MBS, not the German banks.

### 3.  Sealink's Claims Are Timely Even If German Law Applies

Sealink's claims are also timely under German law.  Section 195 of the German Civil Code ("BGB") provides that the standard limitation period is three years.  Section 199(1) provides, "Unless another commencement of limitation is determined, the standard limitation period commences *at the end of the year* in which: (1) the claim arose and (2) the obligee obtains knowledge of the circumstances giving rise to the claim and of the identity of the obligor, or would have obtained such knowledge if he had not shown gross negligence."  BGB § 199(1).

This Court has repeatedly recognized that reasonable investors could not have known about Countrywide's fraud relating to its sale of MBS before early 2008:

- "Other complaints and public press reports make clear that a reasonable investor would have been aware of problems with underwriting at Countrywide by early 2008." *Stichting*, 2011 WL 3558173, at *8.

- "A reasonable plaintiff exercising reasonable diligence . . . should have discovered facts sufficient to state every element of its claim at least prior to February 14, 2009." *Id.* at *11.

- "The Court recently held, under California's very lenient inquiry notice standard, that an RMBS plaintiff had notice of potential claims against Countrywide by February 14, 2008." *Allstate Ins. Co.*, 2011 WL 5067128, at *13 (citing *Stichting*, 2011 WL 3558173, at *12).

Indeed, numerous government investigations of Countrywide's wrongful conduct were initiated *after* 2008, including an investigation by the Illinois Attorney General. In addition, it was not until October 6, 2008, that Countrywide announced it had settled claims brought by 11 states, including California and Illinois, agreeing to implement an estimated $8.4 billion program to modify pre-2008 Countrywide-originated mortgages.[8]

In *Stichting*, this Court applied the standard for inquiry notice articulated by the Supreme Court in *Merck & Co., Inc. v. Reynolds*, 130 S. Ct. 1784, 1798 (2010): "[t]he statute of limitations does not begin to run until Plaintiff either knew, or . . . should have known, 'the facts constituting the violation.'" *Stichting*, 2011 WL 3558173, at *7. Under *Merck*, the statute of limitations is triggered when a reasonable investor "should have known 'the facts constituting the violation.'" 130 S. Ct. at 1798.

Under German law, however, the relevant inquiry is not when a reasonable person would have discovered their claims; rather it is when a plaintiff either actually knew of the circumstances giving rise to its claims or was ***grossly negligent*** in failing to obtain such knowledge. *See* BGB § 199. Defendants do not contend that Sealink had actual knowledge of its claims prior to January 2008. Likewise, Defendants have not – and cannot – establish that Sealink was ***grossly negligent*** in failing to learn of its fraud claims prior to 2008.[9]

---

[8] ¶84. Moreover, one case suggests that "[u]nder German law, triggering of the statute of limitations requires the claimant's awareness, or *grossly negligent* behavior leading to a lack of awareness, of *all* facts that give rise to a claim." *Studio & Partners, s.r.l. v. KI*, No. 06-C-0628, 2008 WL 426496, at *9 (E.D. Wis. Feb. 14, 2008) (quoting plaintiff's brief) (emphasis in original).

[9] In a misguided effort to show that time began to run prior to 2008, Defendants attempt to compare the allegations in *Sealink* to earlier complaints against Countrywide. Mot. at 73-74. This argument fails. First, none of the complaints Defendants reference asserted fraud claims in connection with Countrywide MBS.

1   Moreover, under German law, a "plaintiff has sufficient knowledge of the

2   circumstances that give rise to the claim . . . when he can be expected, due to his

3   factual knowledge, to file a law suit which *has a reasonable chance of success*."

4   Declaration Of Michael Neises In Support Of Plaintiff's Opposition To

5   Defendants' Motion To Dismiss ("Neises Decl.") ¶5 (emphasis added).  At best,

6   Defendants have raised an issue of fact which is not properly resolved on a motion

7   to dismiss.[10]  *See, e.g., China Dev. Indus. Bank v. Morgan Stanley & Co. Inc.*, 86

8   A.D.3d 435, 437, 927 N.Y.S. 2d 52 (2011) (rejecting defendants' inquiry notice

9   arguments because they raised issues of fact); *Universal-MCA Music Publ'g v. Bad*

10   *Boy Entm't, Inc.*, No. 601935/02, 2003 WL 21497318, at *7 (N.Y. Sup. June 18,

11   2003) ("issues [of] facts are not properly resolved on a motion to dismiss"); *see*

12   *also Katz v. Goodyear Tire & Rubber Co.*, 737 F.2d 238, 242 (2d Cir. 1984)

13   (questions of fact that arise in applying a statute of limitations are for the trier of

14   fact.); *see also* Neises Decl., ¶5 ("Under German civil law, the required knowledge

15   of the actual circumstances is a factual question to be determined based on the

16   facts and circumstances.").[11]

17   _____

18    Second, the existence of other complaints does not, as required under German law,

19   establish that Plaintiff had actual knowledge or was *grossly negligent* in failing to
     obtain all the facts necessary to bring these claims.

20   [10] Indeed, Defendants rely on cases that resolved statute of limitations issues at the

21   summary judgment stage.  *See, e.g., Lang*, 582 F. Supp. 1421 ("The case is

22   currently before the Court on defendants' motion for partial summary judgment on
     the ground that plaintiff's federal securities law claims are barred by the applicable

23   statute of limitations".).

24   [11] Because the facts underlying Sealink's negligent misrepresentation claim are the

25   same as its fraud claim, the six-year statute of limitations should apply to both
     claims.  *See, e.g., Cnty. of Ulster v. Highland Fire Dist.*, 2006 NY slip op. 3666, 4

26   (N.Y. App. 2006) ("if the facts underlying a cause of action for negligent

27   misrepresentation also state a cause of action for fraud, it too must be brought
     within six years of the offending conduct."); *Milin Pharmacy, Inc. v. Cash Register*

28   *Sys., Inc.*, 173 A.D.2d 686, 687 (N.Y. App. 1991) (same); *Kerrigan v RM Assocs.*,

1  **IV.**  **CONCLUSION**

2         For the foregoing reasons, Defendants' motions to dismiss should be denied

3  in their entirety.  In the event the Court decides to dismiss any portion of Sealink's

4  claims, Plaintiff respectfully requests leave to amend.

5

6  Dated:  January 13, 2012                Respectfully submitted,

7                                          BERNSTEIN LITOWITZ BERGER
                                             & GROSSMANN LLP
8

9                                          By    /s/ Timothy A. DeLange
                                                 Timothy A. DeLange
10

11                                         Blair A. Nicholas (Bar No. 178428)
                                           (blairn@blbglaw.com)
12                                         Timothy A. DeLange (Bar No. 190768)
                                           (timothyd@blbglaw.com)
13                                         Brett M. Middleton (Bar No. 199427)
                                           (brettm@blbglaw.com)
14                                         Matthew P. Jubenville (Bar No. 228464)
                                           (matthewj@blbglaw.com)
15                                         Paul M. Jonna (Bar No. 265389)
                                           (paulj@blbglaw.com)
16                                         12481 High Bluff Drive, Suite 300
                                           San Diego, CA 92130
17                                         Tel:   (858) 793-0070
                                           Fax:   (858) 793-0323
18                                                 -and-
                                           David L. Wales
19                                         Jai K. Chandrasekhar
                                           Lauren A. McMillen
20                                         1285 Avenue of the Americas
                                           New York, NY 10019
21                                         Tel:   (212) 554-1400
                                           Fax:   (212) 554-1444
22

23

24

25

26  *Inc.*, 2008 NY slip op. 33322U, 16 (N.Y. Sup. Ct. Dec. 9, 2008) (same).  *See also*

27  *Santiago v. 1370 Broadway Assocs., L.P.*, 96 N.Y.2d 765, 766 (2001) (statute of

28  limitations issue could not be decided as a matter of law where there were issues of
    fact as to whether defendants' actions were negligent or fraudulent).

*Counsel for Plaintiff Sealink Funding Limited*

PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTIONS TO DISMISS
Case No. 11-CV-08896-MRP (MANx)