MICHAEL C. TU (SBN 186793)
*mtu@orrick.com*
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, California 90017
Telephone:   213-629-2020
Facsimile:    213-612-2499

MICHAEL D. TORPEY (SBN 79424)
*mtorpey@orrick.com*
FRANK M. SCADUTO (SBN 271451)
*fscaduto@orrick.com*
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, California 94105
Telephone:   415-773-5700
Facsimile:    415-773-5759

Attorneys for Defendant David Sambol

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| In re COUNTRYWIDE FINANCIAL CORP. MORTGAGE-BACKED SECURITIES LITIGATION CASES | Case No. 11-ML-2265-MRP (MANx) |
| | **DEFENDANT DAVID SAMBOL'S REPLY BRIEF IN SUPPORT OF HIS CONSOLIDATED MOTIONS TO DISMISS ON TIMELINESS AND JURISDICTIONAL GROUNDS** |
| | Dates:        February 13, 2012<br>                   11:00 a.m.<br>                   February 14, 2012<br>                   1:00 p.m.<br>Courtroom: 12<br>Judge:        Hon. Mariana R. Pfaelzer |
| PUTNAM BANK, Individually and on Behalf of All Others Similarly Situated,<br><br>                   Plaintiff,<br><br>          v.<br><br>COUNTRYWIDE FINANCIAL CORPORATION, et al.,<br><br>                   Defendants. | Case No. 11-CV-4698-MRP (MANx) |

DEFENDANT DAVID SAMBOL'S REPLY BRIEF
IN SUPPORT OF HIS CONSOLIDATED MOTIONS TO DISMISS
ON TIMELINESS AND JURISDICTIONAL GROUNDS

OHSWEST:261519997.4

| | |
|---|---|
| WESTERN AND SOUTHERN LIFE INSURANCE COMPANY, et al., | Case No. 11-CV-7166-MRP (MANx) |
| Plaintiffs, | |
| v. | |
| COUNTRYWIDE FINANCIAL CORPORATION, et al., | |
| Defendants. | |
| AMERICAN FIDELITY ASSURANCE COMPANY, | Case No. 11-CV-7167-MRP (MANx) |
| Plaintiff, | |
| v. | |
| COUNTRYWIDE FINANCIAL CORPORATION, et al., | |
| Defendants. | |
| SEALINK FUNDING LIMITED, | Case No. 11-CV-8896-MRP (MANx) |
| Plaintiff, | |
| v. | |
| COUNTRYWIDE FINANCIAL CORPORATION, et al., | |
| Defendants. | |
| NATIONAL INTEGRITY LIFE INSURANCE COMPANY, | Case No. 11-CV-9889-MRP (MANx) |
| Plaintiff, | |
| v. | |
| COUNTRYWIDE FINANCIAL CORPORATION, et al., | |
| Defendants. | |

DEFENDANT DAVID SAMBOL'S REPLY BRIEF
IN SUPPORT OF HIS CONSOLIDATED MOTIONS TO DISMISS
ON TIMELINESS AND JURISDICTIONAL GROUNDS

OHSWEST:261519997.4

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................................................. 1

II.  THE CLAIMS AGAINST MR. SAMBOL ARE UNTIMELY .................... 1

    A.   American Pipe Tolling Cannot Save Plaintiffs' Claims ...................... 1

    B.   State Law Tolling Doctrines Do Not Apply ........................................ 4

    C.   AFAC's "Aiding and Abetting" Claim Is Uniquely Time-Barred ....... 6

    D.   Sealink's Negligent Misrepresentation Claim Is Also Uniquely
       Time-Barred ....................................................................................... 7

III. AFAC AND WSLIC HAVE NOT MET THEIR BURDEN OF
    ESTABLISHING PERSONAL JURISDICTION OVER MR.
    SAMBOL ................................................................................................. 8

    A.   AFAC Has Not Established Personal Jurisdiction Over Mr.
       Sambol in Oklahoma .......................................................................... 9

    B.   WSLIC Has Not Established Personal Jurisdiction Over Mr.
       Sambol in Ohio ................................................................................. 10

        1.   OCAA Does Not Confer Personal Jurisdiction ........................ 10

        2.   The Ohio Long-Arm Statute Does Not Confer Personal
           Jurisdiction ............................................................................. 11

        3.   Jurisdiction Would Violate Due Process ................................. 14

IV.  CONCLUSION ..................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Ahrendt v. Palmetto Fed. Sav. & Loan Ass'n,*
  680 F. Supp. 1125 (S.D. Ohio 1987)......................................................... 13

*Albano v. Shea Homes Ltd. P'ship,*
  634 F.3d 524 (9th Cir. 2011) ...................................................................... 2

*All Am. Car Wash, Inc. v. Nat'l Pride Equipment, Inc.,*
  550 F. Supp. 166 (W.D. Okla. 1981)......................................................... 10

*Allstate Ins. Co. v. Countrywide Fin. Corp.,*
  2011 WL 5067128 (C.D. Cal. Oct. 21, 2011) ........................................... 15

*Alsop v. Carolina Custom Prods., Inc.,*
  2007 WL 2441025 (C.D. Cal. Jun. 29, 2007) ........................................... 14

*Anschutz Corp. v. Merrill Lynch & Co. Inc.,*
  785 F. Supp. 2d 799 (N.D. Cal. 2011)....................................................... 15

*Athenian Venture Partners III, L.P. v. Infrastructure Solutions, Inc.,*
  2009 U.S. Dist. LEXIS 48840 (S.D. Ohio May 19, 2009)........................ 12

*Cabrini Med. Ctr. v. Desina,*
  64 N.Y.2d 1059 (N.Y. 1985) ....................................................................... 8

*Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.,*
  173 F.3d 725 (9th Cir. 1999) ..................................................................... 14

*Crown, Cork & Seal Co., Inc. v. Parker,*
  462 U.S. 345 (1983) .................................................................................... 2

*Donner v. Tams-Witmark Music Library, Inc.,*
  480 F. Supp. 1229 (E.D. Pa. 1979)............................................................ 10

*Eastwood v. Nat'l Bank of Commerce,*
  673 F. Supp. 1068 (W.D. Okla. 1987)......................................................... 7

*Footbridge Ltd. Trust v. Countrywide Home Loans, Inc.,*
  2010 WL 3790810 (S.D.N.Y. Sept. 28, 2010) .......................................... 15

*Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.,*
  284 F.3d 1114 (9th Cir. 2002) ................................................................... 15

*Goldstein v. Christiansen,*
  638 N.E.2d 541(Ohio 1994) ...................................................................... 12

*Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.,*
  328 F.3d 1122 (9th Cir. 2003) ................................................................... 15

OHSWEST:261519997.4

# TABLE OF AUTHORITIES
## (continued)

Page(s)

*Herbruck v. LaJolla Capital*,
  2000 WL 1420282 (Ohio Ct. App. Sept. 27, 2000) ..............................13

*Heritage Funding & Leasing Co. v. Phee*,
  698 N.E.2d 67 (Ohio Ct. App. 1997) ...................................................13

*In re Dynamic Random Access Memory Antitrust Litig.*,
  2005 WL 2988715 (N.D. Cal. Nov. 7, 2005) ......................................15

*In re Global Crossing, Ltd. Sec. Litig.*,
  313 F. Supp. 2d 189 (S.D.N.Y. 2003) ...................................................8

*In re LDK Solar Secs. Litig.*,
  2008 U.S. Dist. LEXIS 80717 (N.D. Cal. Sept. 24, 2008) ...................14

*In re Nat'l Century Fin. Enter., Inc., Inv. Litig.*,
  504 F. Supp. 2d 287 (S.D. Ohio 2007) ..................................................6

*In re Nat'l Century Fin. Enter., Inc., Inv. Litig.*,
  617 F. Supp. 2d 700 (S.D. Ohio 2009) ................................................13

*Jurko v. Jobs Europe Agency*,
  43 Ohio App. 2d 79 (1975) ...................................................................11

*j2 Global Commc'ns., Inc. v. Blue Jay, Inc.*,
  2009 WL 29905 (N.D. Cal. Jan. 5, 2009) ............................................14

*Lindner Dividend Fund, Inc. v. Ernst & Young*,
  880 F. Supp. 49 (D. Mass. 1995) .......................................................2, 3

*Maverick Fund, L.D.C. v. Comverse Tech., Inc.*,
  801 F. Supp. 2d 41(E.D.N.Y. 2011) ......................................................8

*NPF XII, Inc. v. Special Care, Inc.*,
  2001 U.S. Dist. LEXIS 24351 (S.D. Ohio Feb. 13, 2001) ...................13

*Ohio ex rel. DeWine v. GMAC Mortgage LLC*,
  2011 U.S. Dist. LEXIS 53449 (N.D. Ohio May 18, 2011) ...................13

*Openwave Sys. Inc. v. Fuld*,
  2009 U.S. Dist. LEXIS 48206 (N.D. Cal. June 6, 2009) .....................14

*Reilly Green Mountain Platform Tennis v. Cortese*,
  2007 WL 7263362 (N.Y. Sup. Ct. Nov. 13, 2007) ................................8

*Rosenbach v. Diversified Grp., Inc.*,
  2006 WL 1310656 (N.Y. Sup. Ct. May 10, 2006) .................................7

*Ruffing v. Union Carbide Corp.*,
  764 N.Y.S.2d 462 (N.Y. App. Div. 2003) .............................................8

- iii -

OHSWEST:261519997.4

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Rippey v. Smith,*
16 F. App'x 596, 598-99 (9th Cir. 2001) .......................................................... 15

*Samica Enters., LLC v. Mail Boxes Etc. USA, Inc.,*
2010 WL 807440 (C.D. Cal. Feb. 26, 2010) ........................................................ 7

*Scott v. Breeland,*
792 F.2d 925 (9th Cir. 1986) ............................................................................... 9

*Shadid v. Monsour,*
746 P.2d 685 (Okla. App. 1987) .......................................................................... 7

*Sinclair Oil Corp. v. Atlantic Richfield Co.,*
720 F. Supp. 894 (D. Utah 1989) .................................................................. 2, 3

*Speer v. Rand McNally & Co.,*
123 F.3d 658 (7th Cir. 1997) ............................................................................... 7

*State v. Warner,*
564 N.E.2d 18 (Ohio 1990) ................................................................................. 5

*Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.,*
802 F. Supp. 2d 1125 (C.D. Cal. 2011) .............................................................. 3

*Swartz v. KPMG LLP,*
476 F.3d 756 (9th Cir. 2007) ............................................................................... 9

*Taylor v. Portland Paramount Corp.,*
383 F.2d 634 (9th Cir. 1967) ............................................................................... 9

*Thornton v. State Farm Mut. Auto Ins. Co.,*
2006 WL 3359448 (N.D. Ohio Nov. 17, 2006) .................................................. 4

*Tosti v. Los Angeles,*
754 F.2d 1485 (9th Cir. 1985) ............................................................................. 2

*U.S. Fidelity and Guaranty Co. v. Sidwell,*
525 F.2d 472 (10th Cir. 1975) ........................................................................... 10

*Universal Tube & Rollform Equip. Corp. v. YouTube, Inc.,*
504 F. Supp. 2d 260 (N.D. Ohio 2007) ............................................................. 10

*Vaccariello v. Smith & Nephew Richards, Inc.,*
763 N.E.2d 160 (Ohio 2002) ............................................................................... 4

*Weller v. Cromwell Oil Co.,*
504 F.2d 927 (6th Cir. 1974) ....................................................................... 12, 13

*Williams v. Boeing Co.,*
517 F.3d 1120 (9th Cir. 2008) ............................................................................. 2

- iv -

OHSWEST:261519997.4

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*World-Wide Volkswagon Corp. v. Woodson,*
  444 U.S. 286 (1980) ................................................................................. 16

*Wright v. Automatic Valve Co.,*
  20 Ohio St. 2d 87 (1969) ......................................................................... 12

*Wyser-Pratte Mgmt. Co., Inc. v. Telxon Corp.,*
  2003 WL 25861087(N.D. Ohio June 4, 2003), *aff'd*, 413 F.3d 553 (6th Cir. 2005)
  ........................................................................................................... 2, 3, 4

**STATUTES**

15 USC §77o ................................................................................................ 3

15 USC §78t(a) ............................................................................................ 3

O.R.C. §1707.44(B)(4) ............................................................................... 5

O.R.C. §1707.41 .......................................................................................... 6

O.R.C. §1707.43 .......................................................................................... 6

O.R.C. §1707.44(G) .................................................................................... 5

O.R.C. §1707.44(J) ..................................................................................... 5

O.R.C. §2307.382(A)(1) ........................................................................... 11

O.R.C. §2307.382(A)(6) ...................................................................... 11, 12

OHSWEST:261519997.4

## I.   **INTRODUCTION**

Mr. Sambol joins in the other defendants' reply briefs to the extent applicable to the claims against him and will not repeat those arguments here.  This short reply memorandum is submitted in order to respond regarding issues that are unique to Mr. Sambol.

Plaintiffs' arguments that their time-barred claims should be equitably tolled under federal and state tolling doctrines are without merit.  Indeed, other than the Section 11 and 15 claims against Mr. Sambol—which are time barred for their own unique reasons—none of the other federal and state law claims were even raised in the *Luther* class action complaint.  As such, those claims are plainly not tolled.  Likewise, the Section 11 claim is time-barred for the reasons identified by the Countrywide Defendants, and the Section 15 claim is time-barred because it was voluntarily dropped and not re-alleged against Mr. Sambol for more than a year in the *Luther* proceedings.

The AFAC and WSLIC lawsuits, which hail from Oklahoma and Ohio respectively, should also be dismissed because there is no personal jurisdiction over Mr. Sambol in those states.  Neither AFAC nor WSLIC contest *any* of the facts in Mr. Sambol's declaration establishing his lack of contacts with Oklahoma and Ohio.  Specially, Plaintiffs do not contest that Mr. Sambol has never lived in, worked in, or owned property in either Oklahoma or Ohio; has never personally transacted business in those states or with any of their residents; and has never set foot in those states with respect to the events alleged in the Complaint.  Plaintiffs do not dispute that they have never even met Mr. Sambol, let alone met him in Oklahoma or Ohio.

## II.   **THE CLAIMS AGAINST MR. SAMBOL ARE UNTIMELY**

### A.   *American Pipe* **Tolling Cannot Save Plaintiffs' Claims**

The WSLIC, National Integrity and Putnam plaintiffs seek to preserve their otherwise time-barred claims against Mr. Sambol by alleging tolling under the *American Pipe* doctrine.  AFAC, for its part, also alleges *American Pipe* tolling, but

only with respect to its Securities Act claims; it does not allege tolling as to its claim against Mr. Sambol under Section 20(a) of the Exchange Act, and that claim can be dismissed for that reason alone.  AFAC Opp'n at 5-8.

Plaintiffs' collective reliance on the decision in *Tosti v. Los Angeles*, 754 F.2d 1485 (9th Cir. 1985) is misplaced.  In subsequent decisions, the Ninth Circuit has severely limited, if not completely rejected, its prior holding in *Tosti*.  For example, the Ninth Circuit has held (subsequent to *Tosti*) that "the tolling rule does not 'leave[ ] a plaintiff free to raise different or peripheral claims following denial of class status.'"  *Williams v. Boeing Co.*, 517 F.3d 1120, 1136 (9th Cir. 2008) (quoting *Crown, Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345, 354 (1983) (Powell, J. concurring)); *see also Albano v. Shea Homes Ltd. P'ship*, 634 F.3d 524, 532 (9th Cir. 2011) ('[c]laims as to which the defendant was not fairly placed on notice by the class suit are not protected under *American Pipe* and are barred by the statute of limitations.'" (alteration in original) (quoting *Crown*, 462 U.S. at 355)).

Federal courts have held that tolling may only apply where defendant has notice of the individual claims asserted against him.  *See Lindner Dividend Fund, Inc. v. Ernst & Young*, 880 F. Supp. 49, 54-55 (D. Mass. 1995) ("the class action suit must give defendant ample notice of plaintiff's individual claim"); *Sinclair Oil Corp. v. Atlantic Richfield Co.*, 720 F. Supp. 894, 913 (D. Utah 1989) ("At the risk of overstating the obvious, the required notice is actual notice of the sued-upon claims, not some 'notice,' derivative by implication from the claim asserted"); *Wyser-Pratte Mgmt. Co., Inc. v. Telxon Corp.*, 2003 WL 25861087, at *17 (N.D. Ohio June 4, 2003), *aff'd*, 413 F.3d 553 (6th Cir. 2005) ("The Court does not broadly impute notice to the defendant of any claims that are peripherally or remotely connected to the allegations in the class complaint.  Only notice of those claims that are central to or derived from the claims in the class complaint will be imputed to the defendant.").  The court in the *Wyser-Pratte* decision that is relied upon by plaintiffs explained that, "a class suit alleging a single securities fraud claim does

1   not necessarily place the defendant on notice of the possibility of being sued for any

2   type of securities violation." *Wyser-Pratte*, 2003 WL 25861087, at *17.

3          Contrary to plaintiffs' assertion, the Section 15 claim asserted against Mr.

4   Sambol in *Luther* is not similar to the Section 20(a) claim and therefore cannot

5   support class action tolling.  Unlike Section 15, Section 20(a) allows for a good faith

6   defense.  *Compare* 15 USC §77o *with* 15 USC §78t(a).  Furthermore, Section 15 and

7   20(a) are derivative control person claims from Sections 11 and 10(b), respectively.

8   These underlying claims require different allegations that must be pled.  For

9   example, Section 10(b) requires showing an inference of scienter, where Section 11

10   does not.  Section 11 requires that allegations concerning reliance must be pled,

11   while Section 10(b) allows plaintiffs to rely on the fraud on the market theory.

12   Section 11, unlike Section 10(b), can only be asserted by plaintiffs who actually

13   purchased the securities in the alleged defective offering.  Also, Section 11 limits

14   actionable misstatements to those that were included in the registration statement or

15   prospectus.  Section 10(b) allows for claims based on alleged misstatements outside

16   of the offering documents.  Accordingly, Putnam's Exchange Act claims are not

17   substantially similar to the Securities Act claims asserted in *Luther* and cannot be

18   tolled.  *See Lindner*, 880 F. Supp. at 54-55 (Securities Act and Exchange Act claims

19   require different pleading burdens and thus are not similar enough to be tolled); *see*

20   *also Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125,

21   1134 (C.D. Cal. 2011) (pleading requirements of Exchange Act claims are so

22   different from Securities Act claims that they could not arise out of the same "core

23   of operative facts" and could not have put defendant on notice of the other);

24   *Sinclair*, 720 F. Supp. at 914, n.51 ("Once the statutory period expires, [defendant]

25   is insulated from suit.  To allow suit anyway, purely because the evidence of his

26   culpability is overwhelming, or because he would not be prejudiced in his defense

27   'by lack of witnesses or faded memories,' undermines the statutory limitations

28   concept.").

Moreover, none of the plaintiffs dispute the reasons stated in Mr. Sambol's opening brief as to why the Section 15 claims are factually distinguishable from those that were tolled in *Maine State II*. Opening Br. at 5. As was explained, the vast majority of offerings at issue in the present complaints were not made in October 2006 when Mr. Sambol was concurrently the President of CFC and the CEO, President, and Chairman of the Board at CWHEQ. Accordingly, *Maine State II* is inapplicable, and plaintiffs offer no response otherwise.

### B.   State Law Tolling Doctrines Do Not Apply

WSLIC and National Integrity similarly attempt to rescue their time-barred state law claims under Ohio tolling principles. But while Ohio allows for cross-jurisdictional tolling under very limited circumstances, plaintiffs' claims do not fall into one of them.[1] The Ohio Supreme Court has recognized that tolling is permitted only when it does not upset the purposes of the statutes of limitations. *Vaccariello v. Smith & Nephew Richards, Inc.*, 763 N.E.2d 160, 162 (Ohio 2002) (quoting *Crown*, 462 U.S. at 352) (tolling must be consistent with the purposes served by the statutes of limitations). One of those purposes is to put defendants on notice of adverse claims. *Id.* Because WSLIC and National Integrity's Ohio Securities Act ("OSA") claims are so different from the claims brought in the *Luther* or *Maine* action, they could not have placed Mr. Sambol on notice of potential Ohio state law claims. *See Wyser-Pratte*, 2003 WL 25861087, at *17 (notice of only claims central or derived from claims in the class complaint can be imputed onto defendant). Furthermore, any resemblance the OSA claims have with federal securities laws are

---

[1] As discussed by the Countrywide Defendants in their opening brief, the *Luther* proceedings, upon which WSLIC and National Integrity rely for tolling, was filed in California state court. Ohio law does not recognize cross-jurisdictional tolling for actions filed in other state courts. *See Thornton v. State Farm Mut. Auto Ins. Co.*, 2006 WL 3359448, at *8 (N.D. Ohio Nov. 17, 2006) (no tolling for Ohio claims relying on an action filed in Illinois state court for tolling). Moreover, WSLIC and National Integrity cannot rely on the *Maine* federal proceeding because their claims had already expired by the time that case was filed.

those that were not brought against Mr. Sambol in *Luther* or *Maine*.

For example, the claim under O.R.C. §1707.44(G) (Count IV) is a "catchall" course of action, which has no counterpart in federal securities law.  Therefore, plaintiffs cannot tether this claim to *any* federal securities claim asserted in *Luther* or *Maine* for tolling purposes.

Similarly, although O.R.C. §§1707.44(B)(4) and 1707.44(J) (Counts II and III) have a scienter requirement like the Section 10(b) and Rule 10b-5 causes of action under the federal securities law, these claims cannot be tolled because Exchange Act claims were not alleged in either *Luther* or *Maine*, and as discussed above, Exchange Act claims are too dissimilar from the Securities Act claims.  Furthermore, the elements of O.R.C. §§1707.44(B)(4) and 1707.44(J) are considerably different than those of the Exchange Act claims.  For example, O.R.C. §§1707.44(B)(4) and (J) only apply to affirmative misstatements, whereas Section 10(b) and Rule 10b-5 apply to both affirmative misstatements and omissions. *Compare State v. Warner*, 564 N.E.2d 18, 38 (Ohio 1990) ("R.C. 1707.44(B)(4) and (J) prohibit only affirmative misrepresentation; they do not apply to fraudulent nondisclosure.") *with* Rule 10b-5 ("It shall be unlawful…to make any untrue statement of a material fact or to omit to state a material fact necessary to in order to make the statements made…not misleading").  Additionally, O.R.C. §1707.44(J), unlike Section 10(b), asserts liability for misstatements that are related only to "the value of securities, or as to alleged facts affecting the value of securities, or as to the financial condition of any issuer of securities."  More notably, O.R.C. §1707.44(J) does not require that any of these statements be made in connection with a purchase or sale of as security, which is a requirement in Section 10(b).  Allegations supporting O.R.C. §§1707.44(B)(4) and (J) are not the type found in either the *Luther* or *Maine* complaints due to their significant variance from the purely Securities Act claims alleged in those prior complaints.  Thus, notice cannot be imputed onto Mr. Sambol for these Ohio state securities law claims.

Finally, although O.R.C. §§1707.41 and 1707.43 lack a scienter requirement like Section 11 of the Securities Act, their scope is significantly different from any Securities Act claim.  Section 11 limits liability to specific and limited categories of defendants (such as those that have actually signed a registration statement) and only for alleged misstatements and omission in the registration statement or prospectus. By contrast, claims under O.R.C. §1707.41 assert liability against the seller of a security for sale, making it more similar to Section 12, a claim *not* brought against Mr. Sambol in *Luther* or *Maine*.  *See In re Nat'l Century Fin. Enter., Inc.*, *Inv. Litig.*, 504 F. Supp. 2d 287, 305-306 (S.D. Ohio 2007) (comparing O.R.C. §1707.41 with Section 12(2)).  However, O.R.C. §1707.41 is significantly broader than Section 12, foreclosing any possibility that the Section 11 allegations in *Luther* or *Maine* could have put Mr. Sambol on notice of O.R.C. §§1707.41 or 1707.43 claims.  For example, O.R.C. §1707.41 is applicable to both private and public securities offerings, whereas Section 12(2) is limited to only public offerings.  *Nat'l Century*, 504 F. Supp. 2d at 305-06.  Moreover, O.R.C. §1707.41 asserts liability against sellers *and* directors of seller-corporations, whereas Section 12 only applies to sellers.  Additionally, §1707.43 further broadens the scope of the OSA and asserts liability over "every person that has participated in or aided the seller in any way" in making the sale in question.  None of the Securities Act claims asserted in *Luther* or *Maine* come close to meeting the pleading standard of §1707.43.   Like WSLIC and National Integrity's other OSA claims, these claims are much too broad to have provided notice to Mr. Sambol based on the allegations asserted for the federal Securities Act claims in *Luther or Maine*.

## C.     AFAC's "Aiding and Abetting" Claim Is Uniquely Time-Barred

AFAC's purported "aiding and abetting" claim should also be dismissed. While Oklahoma may recognize a purported conspiracy to defraud claim, that does nothing to support tolling for AFAC's aiding and abetting fraud claim.  First, an alleged conspiracy to defraud under Oklahoma law requires "a meeting of the minds

on the course of action, coupled with an intent to commit the fraudulent act which results in the injury." *Shadid v. Monsour*, 746 P.2d 685, 689 (Okla. App. 1987).  By contrast, an aiding and abetting claim generally requires that defendant knowingly provide substantial assistance to the primary violator in a wrongful act that causes the injury.  An aiding and abetting claim, which is not recognized by Oklahoma law, not only requires an entirely different set of elements, it is also broader than a conspiracy to defraud claim.  It is a well-established precept that a plaintiff cannot add new claims in its opposition brief to a motion to dismiss.  *See Samica Enters., LLC v. Mail Boxes Etc. USA, Inc.*, 2010 WL 807440, at *3 (C.D. Cal. Feb. 26, 2010) (rejecting plaintiffs' attempt to expand scope of claim via its opposition brief) (citing *Speer v. Rand McNally & Co.*, 123 F.3d 658, 665 (7th Cir. 1997) ("A plaintiff may not amend his complaint through arguments in his brief in opposition….")).

Even if the causes of action for conspiracy to defraud and aiding and abetting fraud were equivalent, which they are not, AFAC has not pled any facts that would establish a conspiracy to defraud claim.  A claim for conspiracy to defraud must meet the heightened pleading requirements of Rule 9(b).  *Eastwood v. Nat'l Bank of Commerce*, 673 F. Supp. 1068, 1081 (W.D. Okla. 1987) (requiring allegations of the conspiracy to defraud be pled with particularity).  Like the plaintiffs in *Eastwood*, Plaintiff here has failed to show "any specific act by this Defendant in furtherance of the alleged conspiracy or an agreement with other Defendants to defraud Plaintiff[], the time and place of the agreement and the substance thereof."  *Id.*

### D.   Sealink's Negligent Misrepresentation Claim Is Also Uniquely Time-Barred.

When determining the applicable statute of limitations under New York law, the court should examine "the essence of the stated claim and not the label by which a plaintiff chooses to identify it."  *Rosenbach v. Diversified Grp., Inc.*, 2006 WL 1310656, at *4 (N.Y. Sup. Ct. May 10, 2006).  In asserting their negligent misrepresentation claim, Plaintiffs "expressly disclaim[ed] any claim of fraud or

intentional misconduct" against the defendants.  Sealink Compl. ¶153 (realleging every allegation previously stated "except any allegations that the Countrywide Defendants made any untrue statements and omissions intentionally or recklessly"). The Court should consider Plaintiffs' own disclaimer of fraud allegations.  *See Maverick Fund, L.D.C. v. Converse Tech., Inc.*, 801 F. Supp. 2d 41, 64 (E.D.N.Y. 2011) (rejecting argument relying on allegations of defendants' intentional or reckless misconduct because complaint "expressly disclaims any claim of fraud or intentional misconduct with regard to its negligent misrepresentation claim"); *In re Global Crossing, Ltd. Sec. Litig.*, 313 F. Supp. 2d 189, 196-98 (S.D.N.Y. 2003) (extended statute of limitations does not apply because plaintiffs disclaimed any fraud allegations with respect to that claim).

When Plaintiffs' allegations are stripped of any assertion of fraud or intentional misconduct, they sound in mere negligence and therefore the three-year statute of limitations applies.  *See Reilly Green Mountain Platform Tennis v. Cortese*, 2007 WL 7263362, at *11 (N.Y. Sup. Ct. Nov. 14, 2007) ("In the absence of allegations of fraud or constructive fraud, Plaintiffs may not rely on the fraud statute of limitations in order to circumvent the statute of limitations applicable to a negligence cause of action."); *Ruffing v. Union Carbide Corp.*, 764 N.Y.S.2d 462, 464 (N.Y. App. Div. 2003) (plaintiffs may not rely on the fraud statute of limitations in order to circumvent the statute of limitations applicable to a negligence cause of action); *Cabrini Med. Ctr. v. Desina*, 64 N.Y.2d 1059, 1061-62 (N.Y. 1985) ("Even if a separate cause of action had been stated, plaintiff could not by allegations of fraud that are incidental to its complaint for breach of contract extend the life of its claim.").

## III. AFAC AND WSLIC HAVE NOT MET THEIR BURDEN OF ESTABLISHING PERSONAL JURISDICTION OVER MR. SAMBOL

"When a defendant moves to dismiss for lack of personal jurisdiction" as Mr. Sambol has, "the plaintiff is obligated to come forward with facts by affidavit or

1  otherwise, supporting personal jurisdiction." *Scott v. Breeland*, 792 F.2d 925, 927

2  (9th Cir. 1986).  Neither AFAC nor WSLIC has met its affirmative burden of

3  establishing personal jurisdiction over Mr. Sambol.  Indeed, both plaintiffs rest their

4  oppositions entirely on the allegations of the complaints and do not submit any

5  further evidence regarding their jurisdictional allegations against Mr. Sambol, and

6  that alone justifies dismissal of the claims against him.  *See id*; *Taylor v. Portland*

7  *Paramount Corp.*, 383 F.2d 634, 639 (9th Cir. 1967) ("We do not think that the

8  mere allegations of the complaint, when contradicted by affidavits, are enough to

9  confer personal jurisdiction of a nonresident defendant").

10  **A.**    **AFAC Has Not Established Personal Jurisdiction Over Mr.**

11          **Sambol in Oklahoma**

12      The only purported basis given by AFAC for exercising personal jurisdiction

13  over Mr. Sambol in Oklahoma are the purported "key executive positions at

14  Countrywide" he held.  AFAC Opp'n at 10-11.  But no attempt is even made to

15  plead allegations connecting Mr. Sambol's roles at California-based Countrywide

16  with any particular actions that were allegedly purposefully directed at Oklahoma.

17  That is unsurprising, as the uncontested facts in Mr. Sambol's sworn declaration

18  undisputedly establishes that he had nothing to do with Oklahoma.  The conclusory

19  allegations concerning Mr. Sambol's alleged titles at Countrywide are not enough to

20  establish minimum contacts with Oklahoma.  *See, e.g.*, *Swartz v. KPMG LLP*, 476

21  F.3d 756, 766 (9th Cir. 2007) ("mere 'bare bones' assertions of minimum contacts

22  with the forum" and "conclusory allegations . . . are insufficient to establish a prima

23  facie showing of personal jurisdiction.").[2]

24  ───────────────

25  [2] AFAC does not dispute that under well-settled MDL procedure, Ninth
Circuit law controls the federal due process analysis required under Oklahoma's

26  long-arm statute.  *See* Sambol Opening Br. at 12.  And yet AFAC does not cite to a
single Ninth Circuit decision in support of its argument that Mr. Sambol's executive

27  positions at a company in California amount to minimum contacts with Oklahoma.

28  The decisions from other jurisdictions cited in AFAC's opposition (at 10) are
inapposite because, as AFAC itself admits, they involved corporate officers who

DEFENDANT DAVID SAMBOL'S REPLY BRIEF
IN SUPPORT OF HIS CONSOLIDATED MOTIONS TO DISMISS
ON TIMELINESS AND JURISDICTIONAL GROUNDS

**B.** **WSLIC Has Not Established Personal Jurisdiction Over Mr. Sambol in Ohio**

WSLIC's attempts to create personal jurisdiction over Mr. Sambol in Ohio fare no better.  WSLIC does not dispute the facts in Mr. Sambol's sworn declaration establishing that he had no relevant contacts with Ohio.  WSLIC's attempts to confer jurisdiction under the Ohio Corrupt Activities Act ("OCAA") and the Ohio long-arm statute are based on nothing more than generalized and conclusory allegations concerning Mr. Sambol and neither the OCAA nor the Ohio long-arm statute authorizes personal jurisdiction over Mr. Sambol.

**1.** **OCAA Does Not Confer Personal Jurisdiction**

Plaintiffs argue that Mr. Sambol should be subject to personal jurisdiction in Ohio simply because they have named him as a defendant in their OCAA claim. WSLIC Opp'n at 42.  But despite the generalized allegation that Mr. Sambol "essentially concede[s]" that he was a member of an "association-in-fact enterprise that committed numerous criminal acts" in Ohio, Plaintiffs provide no factual or legal basis for their claim.  *Id.*  Such conclusory allegations are insufficient to invoke personal jurisdiction over individual corporate officers under the OCAA and Ohio law.  *See, e.g.*, *Universal Tube & Rollform Equip. Corp. v. YouTube, Inc.*, 504 F. Supp. 2d 260, 271 (N.D. Ohio 2007) (plaintiff must "allege specific actions of [individual officers] that submitted them to personal jurisdiction" under OCAA).

---

"personally took part in" tortious conduct directed at the forum.  *See Donner v. Tams-Witmark Music Library, Inc.*, 480 F. Supp. 1229 (E.D. Pa. 1979) (officer "regularly" entered into agreements and contracts with forum residents); *All Am. Car Wash, Inc. v. Nat'l Pride Equipment, Inc.*, 550 F. Supp. 166 (W.D. Okla. 1981) (officer personally transacted business with forum); *U.S. Fidelity and Guaranty Co. v. Sidwell*, 525 F.2d 472, 475-6 (10th Cir. 1975) (CEO "personally diverted [trust] funds," and was thus "personally responsible" under a specific statute naming managing officers liable for the proper application of trust funds).

## 2.    The Ohio Long-Arm Statute Does Not Confer Personal Jurisdiction

Plaintiffs also argue that Mr. Sambol is subject to personal jurisdiction in Ohio based upon two provisions of Ohio's long-arm statute:  "transacting any business in [Ohio]" and "causing tortious injury in [Ohio] by an act outside [Ohio] committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in [Ohio]."  O.R.C. §2307.382(A)(1) & (6); WSLIC Opp'n at 42-47.  However, neither provision applies to Mr. Sambol.

Plaintiffs allege that "each of the Officer Defendants," including Mr. Sambol, "was actively involved in the dissemination of false Offering Materials in Ohio." WSLIC Opp'n at 43-44.  But it is undisputed that Mr. Sambol did not sign *any* of the offering materials at issue.  Nor do Plaintiffs allege any specific role that he played in connection with those offering materials.  Rather, the opposition cites a hodgepodge of allegations having nothing to do with specific MBS offerings, let alone ones directed at Ohio or those at issue here.  *Id.* at 44 n.41.[3]  These allegations are plainly insufficient, do not establish that Mr. Sambol personally "transacted business" in Ohio, and warrant dismissal.  *See, e.g.*, *Jurko v. Jobs Europe Agency*, 43 Ohio App. 2d 79, 85-87 (1975) (affirming dismissal because, "[w]hile the plaintiff is entitled to have his factual allegations sustaining personal jurisdiction

---

[3]  Citing WSLIC FAC ¶5 (internal email from Mr. Sambol regarding loan pricing), ¶87 (another internal email from Mr. Sambol to Mr. Mozilo), ¶179 (vague allegation that "Mozilo and other Officer Defendants" were incentivized by bonuses), ¶193 (Mr. Sambol's statements at an earnings call regarding "profiteering from default-related services"), ¶290 (conclusory allegation that Mr. Sambol is "liable for misrepresentations in Offering Materials"), ¶323 (allegation regarding Mr. Sambol's role in underwriting policies and new product offerings), ¶325 (allegations regarding Mr. Sambol's role in underwriting policies and exceptions processes), ¶330 (allegation that Mr. Sambol pressured Countrywide employees), and ¶332 (allegation regarding Mr. Sambol's role in loan offerings).

1   construed in his favor . . . the plaintiff must nevertheless first plead or otherwise

2   make a prima facie showing of jurisdiction . . . plaintiff, faced with a jurisdictional

3   challenge in the form of [defendant's motion to dismiss and accompanying

4   affidavit], simply countered with a brief in opposition that argued law rather than

5   fact and was unaccompanied by any affidavit"); *Weller v. Cromwell Oil Co.*, 504

6   F.2d 927, 928-9 (6th Cir. 1974) (affirming dismissal of officer defendants and

7   finding, "[o]n its face," plaintiff's affidavit was, "ambiguous and insufficient to

8   establish that [defendants] individually" transacted business within Ohio); *Wright v.*

9   *Automatic Valve Co.*, 20 Ohio St. 2d 87, 88-89 (1969) (where plaintiff, "not having

10  pleaded facts sufficient to meet the statutory requirement," i.e., having failed to

11  "allege specifically" facts to support "a reasonable inference" that the long-arm

12  statute applied, personal jurisdiction did not exist).[4]

13      With respect to Plaintiffs' argument under the "tortious injury" prong,

14  Plaintiffs do not plead any facts showing that Mr. Sambol took any alleged action

15  "with the purpose of injuring persons . . . in [Ohio]." O.R.C. §2307.382(A)(6).

16  Plaintiffs attempt to link Mr. Sambol to Ohio is based solely on his roles on behalf

17  of Countrywide, which is not enough to establish personal jurisdiction. *See, e.g.*,

18  *Weller*, 504 F.2d at 929. The cases relied upon to support Plaintiffs' Section

19  2307.382(A)(6) claim are inapposite and distinguishable from Mr. Sambol's

20

21

---

22      [4] The *Goldstein v. Christiansen* decision, cited by Plaintiffs, is distinguishable
23  because it involved an accounting malpractice action in which the individual
    defendants personally "prepared and submitted misleading financial statements to
24  the [plaintiffs] by mailing these statements to Ohio." 638 N.E.2d 541, 544-45 (Ohio
25  1994). The *Athenian Venture Partners III, L.P. v. Infrastructure Solutions, Inc.*
    decision suffers from a similar flaw, as plaintiffs there submitted evidence of
26  defendants' direct involvement in the creation and dissemination of fraudulent
27  financial statements. 2009 U.S. Dist. LEXIS 48840, at *9 (S.D. Ohio May 19,
    2009). Mr. Sambol is not alleged to have personally prepared or submitted any of
28  the Offering Materials to Plaintiffs.

1    situation.[5]

2         Plaintiffs inaccurately state that Mr. Sambol asserts the fiduciary shield

3    doctrine as a defense against personal jurisdiction.  WSLIC Opp'n at 45.  Mr.

4    Sambol has not, and does not, argue that Ohio lacks personal jurisdiction over him

5    merely because his contacts with and actions affecting Ohio resulted from his

6    corporate capacity, as in the decisions cited by Plaintiffs.  *See NPF XII, Inc. v.*

7    *Special Care, Inc.*, 2001 U.S. Dist. LEXIS 24351, at *11 (S.D. Ohio Feb. 13, 2001)

8    ("[defendant] does not deny that she has had contact with Ohio, but argues that,

9    because her contacts were only in her capacity as president . . . she has not had the

10   requisite minimum contacts with Ohio"); *Heritage Funding & Leasing Co. v. Phee*,

11   698 N.E.2d 67, 73-74 (Ohio Ct. App. 1997) ("defendant claims that personal

12   jurisdiction cannot be exercised against him based upon alleged acts he performed as

13   an officer").  Mr. Sambol has always argued that Ohio lacks personal jurisdiction

14   over him because he has absolutely no contacts with Ohio, in any capacity, and

15   Plaintiffs have not and cannot allege otherwise.

16        Plaintiffs also claim that Mr. Sambol "played a central role in bringing about

17   the sweeping change" that affected Countrywide's underwriting policies and loan

18   offerings.  WSLIC Opp'n at 45.  But those conclusory allegations are not even tied

19

20        [5] *See In re Nat'l Century Fin. Enter., Inc., Inv. Litig.*, 617 F. Supp. 2d 700,
21   707-11 (S.D. Ohio 2009) (individual defendant chose not to submit affidavit
     disputing allegations, instead relying solely on the corporate shield doctrine and
22   complaint contained, "numerous allegations" of "active and personal involvement in
     looting and defrauding [corporation]" ); *Ahrendt v. Palmetto Fed. Sav. and Loan*
23   *Ass'n*, 680 F. Supp. 1125, 1128-29 (S.D. Ohio 1987) (finding personal jurisdiction
24   over defendant *corporations* where but-for causation existed); *Herbruck v. LaJolla*
     *Capital*, 2000 WL 1420282, at *3 (Ohio Ct. App. Sept. 27, 2000) (individual
25   defendant's affidavit conceded involvement in Ohio transactions causing tortious
26   injury); *Ohio ex rel. DeWine v. GMAC Mortgage LLC*, 2011 U.S. Dist. LEXIS
     53449, at *2-3 (N.D. Ohio May 18, 2011) (individual defendant admitted contact
27   with Ohio by signing affidavits on behalf of corporation in foreclosure proceedings
28   brought in various courts throughout Ohio).

1  to any particular policies, procedures, or loans that Countrywide instituted with
2  respect to Ohio or to Plaintiffs.

3      Similarly, Plaintiffs' allegation that "the Officer Defendants sold an enormous
4  amount" of stock and "received multi-million dollar bonuses" do not identify with
5  any specificity which officer defendants they are referring to, how much stock was
6  sold, whether or why an "enormous amount" suggests any wrongdoing or fraud, or
7  how any alleged bonuses relate to Plaintiffs' claims.  WSLIC Opp'n at 46-47.

### 3.   Jurisdiction Would Violate Due Process

9      Even if the WSLIC Plaintiffs could establish jurisdiction over Mr. Sambol
10 under either OCAA or the Ohio long-arm statute, any such exercise of jurisdiction
11 would be inconsistent with fundamental notions of due process.

12     Plaintiffs' argument for minimum contacts turns exclusively on conclusory
13 and collective allegations concerning "the Officer Defendants['] . . . role in
14 Countrywide's scheme to off-load toxic MBS on investors such as [WSLIC]."
15 WSLIC Opp'n at 48.  But those allegations do not establish the required element
16 that Mr. Sambol personally aimed any conduct or statements at Minnesota.  *See*
17 *Alsop v. Carolina Custom Prods., Inc.*, 2007 WL 2441025, at *7 (C.D. Cal. Jun. 29,
18 2007) ("[D]efendant must 'individually target' the forum state rather than just
19 commit an act that has foreseeable effects in the forum state.").[6]  Nor could they

20

---

21     [6] Plaintiffs' cases in this respect are inapposite.  *See Openwave Sys. Inc. v.*
22 *Fuld*, 2009 U.S. Dist. LEXIS 48206, at *33-35 (N.D. Cal. June 6, 2009) (defendants
   *personally* made misrepresentations directed at forum); *In re LDK Solar Secs. Litig.*,
23 2008 U.S. Dist. LEXIS 80717, at *18-19 (N.D. Cal. Sept. 24, 2008) ("defendants
   actually signed and caused to be filed an allegedly fraudulent IPO prospectus"
24 targeted at United States in case where minimum contacts with the United States—
   rather than any particular state—was required); *j2 Global Commc'ns., Inc. v. Blue*
25 *Jay, Inc.*, 2009 WL 29905, at *9 (N.D. Cal. Jan. 5, 2009) (defendant "was directly
26 involved and personally participated in the unsolicited fax advertising that allegedly
   affected its fax machines and customers in California"); *Coastal Abstract Serv., Inc.*
27 *v. First Am. Title Ins. Co.*, 173 F.3d 725, 734 (9th Cir. 1999) (personal jurisdiction
28 not even at issue).

1    because as Mr. Sambol's declaration demonstrates, he had nothing to do with the

2    sale of the certificates to these plaintiffs in Oklahoma.

3         Plaintiffs' bald allegations also have no connection to Plaintiffs' claims of

4    damage arising out of the particular certificates they purchased. *See Glencore Grain*

5    *Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1123-24 (9th Cir.

6    2002) (forum contacts must be the "but for" cause of plaintiff's injury).[7]  This is true

7    notwithstanding plaintiffs' attempt to manufacture a connection under a "scheme" or

8    "orchestration" theory. *See, e.g.*, *In re Dynamic Random Access Memory Antitrust*

9    *Litig.*, 2005 WL 2988715, at *8 (N.D. Cal. Nov. 7, 2005) ("declin[ing] plaintiffs'

10   invitation to adopt the conspiracy theory of personal jurisdiction" and further

11   holding that "plaintiffs' conspiracy allegations are insufficient in that they are wholly

12   conclusory").[8]

13         [7] This Court and others have recognized the attenuation between allegations

14   concerning Countrywide generally and the specific certificates purchased by
     plaintiffs in similar cases. *See Allstate Ins. Co. v. Countrywide Fin. Corp.*, 2011

15   WL 5067128, at *21 (C.D. Cal. Oct. 21, 2011) (certificate purchaser "cannot
     recover in fraud against Countrywide merely because Countrywide underwrote

16   risky loans and issued risky RMBS; [plaintiff] must establish that Countrywide lied
     about the attendant risks."); *Footbridge Ltd. Trust v. Countrywide Home Loans,*

17   *Inc.*, 2010 WL 3790810, at *24 (S.D.N.Y. Sept. 28, 2010) ("The statements include

18   comments on Countrywide's business as a whole; they do not relate to the
     Certificates plaintiffs purchased.").

19

20         [8] The cases cited by plaintiffs offer no support for their position. *See Rippey*

21   *v. Smith*, 16 F. App'x 596, 598-99 (9th Cir. 2001) (*affirming dismissal* for lack of
     personal jurisdiction despite finding that defendants "expressly aimed" and

22   "individual[ly] target[ed]" plaintiff); *Anschutz Corp. v. Merrill Lynch & Co. Inc.*,

23   785 F. Supp. 2d 799, 833 (N.D. Cal. 2011) (also *dismissing* for lack of personal
     jurisdiction:  "The only direct evidence provided by plaintiff to counter

24   [defendants'] declarations" was deemed to be a "slim reed . . . insufficient to

25   establish that [defendant] played a role in the ratings."); *Harris Rutsky & Co. Ins.*
     *Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1132 (9th Cir. 2003) (involving

26   defendant corporation—not an individual—that conducted business in forum state,

27   frequently contacted plaintiff in forum state and "drafted the contract at the heart of
     [the] dispute," which was also "consummated and for the most part performed in

28   [the forum state]").

1    Plaintiffs do not respond regarding why jurisdiction would offend "traditional
2  notions of fair play and substantial justice."  *World-Wide Volkswagon Corp. v.*
3  *Woodson*, 444 U.S. 286, 297 (1980).  Plaintiffs do not and cannot rebut the
4  inconvenience and unfairness that would arise from requiring a California citizen to
5  come to Minnesota to defend a lawsuit arising out of alleged misconduct that
6  primarily occurred in California, involving a California company, and for which
7  most witnesses and documents are located in California.

8  **IV.    CONCLUSION**

9    For the foregoing reasons, and the reasons stated in the briefs submitted by
10  the Countrywide Defendants and the other individual defendants, the claims against
11  Mr. Sambol should be dismissed.

13  Dated:      February 3, 2012         Respectfully submitted,

14                                       ORRICK, HERRINGTON & SUTCLIFFE LLP

15                                       By:  _____*/s/ Michael C. Tu*_____
16                                                  Michael C. Tu

17                                       Attorneys for Defendant David Sambol

- 16 -