1  Brian E. Pastuszenski (*pro hac vice*)
   bpastuszenski@goodwinprocter.com
2  John J. Falvey (*pro hac vice*)
   jfalvey@goodwinprocter.com
3  Adam Slutsky (*pro hac vice*)
   aslutsky@goodwinprocter.com
4  **GOODWIN PROCTER LLP**
   Exchange Place
5  Boston, MA 02109-2802
   Tel.:  617-570-1000
6  Fax:  617-570-1231

7  Lloyd Winawer (SBN 157823)
   lwinawer@goodwinprocter.com
8  **GOODWIN PROCTER LLP**
   601 South Figueroa Street, 41st Floor
9  Los Angeles, California 90017
   Tel.:  213-426-2500
10 Fax:  213-623-1673

11 *Attorneys for Defendants*
   Countrywide Financial Corporation, Countrywide
12 Home Loans, Inc., CWALT, Inc., CWABS, Inc.,
   CWHEQ, Inc., and Countrywide Securities
13 Corporation

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN re COUNTRYWIDE FINANCIAL CORP. MORTGAGE-BACKED SECURITIES LITIGATION CASES | Case No. 11-ML-02265-MRP (MANx) <br><br> **REPLY DECLARATION OF STEPHEN AULD QC IN FURTHER SUPPORT OF THE COUNTRYWIDE DEFENDANTS' MOTION TO DISMISS** |
| SEALINK FUNDING LIMITED, <br><br> Plaintiff, <br><br> v. <br><br> COUNTRYWIDE FINANCIAL CORPORATION, *et al.*, <br><br> Defendants. | Case No. 11-CV-08896-MRP (MANx) <br><br> Date/Time: September 11, 2012, 11:00 a.m. <br> Courtroom: 12 <br> Judge: Hon. Mariana R. Pfaelzer |

DECLARATION OF STEPHEN AULD QC

I, **STEPHEN AULD QC**, born 1957, a citizen of the United Kingdom, residing at Wisteria House, 58 Burkes Road, Beaconsfield, Buckinghamshire HP9 1EE, England, **MAKE OATH** and pursuant to 28 U.S.C. § 1746, herewith declare as follows:

**INTRODUCTION**

1. I submit this Reply Declaration, which is true to the best of my knowledge and information and belief, in response to the Rebuttal Declaration of Andrew Onslow QC (the "Onslow Rebuttal Declaration"), and in further support of my earlier Declaration of Stephen Auld QC dated 30 July 2012 in Support of the Countrywide Defendants' Motion to Dismiss (the "Auld Declaration"). Where appropriate, this Reply Declaration uses the Auld Declaration's definitions and abbreviations.

2. This Reply Declaration addresses only those statements in the Onslow Rebuttal Declaration that appear to be additional and it does not address statements that merely repeat points in the original Onslow Declaration (which I have already addressed in the Auld Declaration). I have reviewed additional English cases and treatises, which are referred to below and attached as Exhibit A.

3. The Onslow Rebuttal Declaration further reinforces the conclusions in the Auld Declaration that in English law (1) the contracts' language is not sufficient to effect an assignment of the causes of action, (2) there has been no legal assignment under the Property Act because the requisite notice of the assignment was not given to the Defendants, and (3) there has been no equitable assignment because the assignors have not been joined and because the Plaintiff's interest in the assigned claim did not pre-exist the assignment.

REPLY DECLARATION OF STEPHEN AULD QC
1

## I. THE TRANSACTION DOCUMENTS' LANGUAGE (ONSLOW REBUTTAL DECLARATION ¶¶ 6-16)

4. The statement in the Onslow Rebuttal Declaration (at paragraph 8) that *"[w]hile the key transactional documents in the present case . . . do not explicitly refer to litigation claims or causes of action . . ., that does not preclude an assignment under English law"* is unsupported by English law. On the contrary, the English cases would lead a court to hold in the present case that the failure to identify the claims within the contractual language precludes any assignment of those claims (as described in the Auld Declaration at paragraphs 17–23).

5. ***Snell's Equity*** (32nd Edition) (attached as Exhibit A–1), a leading English treatise on the principles of the law of equity, states (at paragraph 3-016) that "*[t]he* assignment *must sufficiently identify the chose which is being assigned.*" Indeed, ***Snell's Equity*** cites the case of ***Watson v. Duke of Wellington*** [1830] 1 Russ & MY 602, 605, which the Auld Declaration previously quoted (at paragraph 17): "*in order to constitute an equitable assignment there must be an engagement to pay out of a particular fund.*" In ***Tailby v. Official Receiver*** [1888] 13 App Cas 523 (HL) (cited at paragraph 7(v) of the Onslow Rebuttal Declaration, at 433), the court held that the chose "*shall answer the description in the assignment, or, in other words, that it shall be capable of being identified as the thing, or as one of the very things assigned.*" These findings reflect the fact that, in English law, parties must sufficiently identify the subject matter of the assignment.[1]

---

[1] See also ***Percival v. Dunn*** [1885] 29 Ch D 128 (referred to in the Onslow Rebuttal Declaration at paragraph 7(v), at 335), where the court found that an assignment was ineffective because its language was general and lacked "words referring to a particular fund due." The court in ***In re Gunsbourg*** [1919] LJKB 479 (CA) (also referred to in paragraph 7(v) of the Onslow Rebuttal Declaration, at 230, 232) reached a similar conclusion, holding that "the assignment, in order to be good, must specify the fund out of which the money is to come" and emphasizing that "it must be made clear that there is a subject matter to be assigned."

6. The Onslow Rebuttal Declaration refers to and relies on cases that confirm this well-established principle. In **Tailby** [1888] 13 App Cas (at 431), the contract expressly identified the subject matter of the assignment as *"all the book debts"* (*i.e.*, *"all the book debts due and owing, or which might, during the continuance of the security, become due and owing to the said mortgagor"*). Similarly, in **Batey v. Jewson Ltd** [2008] EWCA Civ 18 (cited at paragraph 14, footnote 3 of the Onslow Rebuttal Declaration, at 47), the contract expressly identified the subject matter as *"any sums of money recoverable from the dispute"* (*i.e.*, *"The company as beneficial owner Assigns to Barry Batey any sums of money recoverable from the dispute with Jewsons in lieu of wages owing."*). Further, in **Tinseltime Ltd v. Roberts** [2011] EWHC 1199 (TCC) (cited at paragraph 33, footnote 13 of the Onslow Rebuttal Declaration, at 454), the contract expressly identified the subject matter as *"the full claim . . . for disruption and damage to factory and machinery"* (*i.e.*, *"The assignor hereby unconditionally and irrevocably assigns and transfers to the assignee all rights and interest in the following: THE FULL CLAIM AGAINST THE WELSH ASSEMBLY GOVERNMENT & ANY SUB CONTRACTORS, FOR DISRUPTION AND DAMAGE TO FACTORY AND MACHINERY, CURRENTLY UNDER NEGOTIATION BY BARLOW ASSOCIATES LTD."*).

7. Where the parties have sufficiently identified the subject matter of the assignment, an English court may if necessary (*i.e.*, where there is some ambiguity) determine the scope of what they have identified. For example, the court in **Tailby** determined that *"all the book debts"* included in its scope *"future book debts,"* and the court in **Jewson** determined that *"any sums of money recoverable from the dispute"* included in its scope the right to bring the dispute and was not limited to the fruits of that right.

REPLY DECLARATION OF STEPHEN AULD QC
3

8. The Onslow Rebuttal Declaration does not identify any contractual language that expressly refers to Plaintiff's tort claims here. Nor does the Onslow Rebuttal Declaration cite any case, and I know of none, in which an English court has recognized claims to have been assigned absent express wording. While English law does not attach some particular significance to individual phrases such as "claims" or "right to sue," the parties must have used express language that sufficiently identifies the claim as part of the subject matter assigned.

9. As described in the cases cited in the Auld Declaration (at paragraphs 20 and 21), the approach of the English courts is that if contracting parties wish for something to happen, they say so expressly in the terms of their written contract. In that regard, consistent with the requirements of English law, in the Phase 1 transaction documents some of the same parties did just this (see Auld Declaration, paragraph 19). The contrary view stated in the Onslow Rebuttal Declaration (at paragraph 13)—that "*if it had been intended not to transfer the causes of action, specific language to that effect would have been used*" (original emphasis)—is not a correct statement of English law. This view also involves the application of the sort of subjective hindsight that the English courts have found inappropriate and that is referred to in the Auld Declaration (at paragraphs 21 and 22). The Onslow Rebuttal Declaration does not cite any English cases supporting this contrary view.

10. In light of the absence of express language assigning legal claims in the transaction documents as described above, the Onslow Rebuttal Declaration's citations from **Rainy Sky SA v. Kookmin Bank** [2011] UKSC 50 (at paragraph 11 of the Onslow Rebuttal Declaration, at 406) and **Jackson v. Dear** [2012] EWHC 2060 (Ch) (at paragraph 16 of the Onslow Rebuttal Declaration, at 262) have no application here. First, in **Rainy Sky** [2011] UKSC 50, the court considered the "*surrounding commercial context*" and

"*business common sense*" to select between two competing interpretations of the express term "*such sums*" (which reasonably could have referred to the sums in two different preceding clauses in the contract). Absent such competing interpretations, a court would not "rewrite the language which the parties have used in order to make the contract conform to business common sense." Here, there is no express term identifying the right to sue that would then be subject to competing interpretations. And even if there were such a term requiring interpretation, an English court would not necessarily rely on "*commercial purpose or business common sense*" to interpret the express words. For example, in **Enterprise Inns Plc v. Palmerston Associates Ltd** [2011] EWHC 3165 (Ch) (attached as Exhibit A–2), the Court held:

> *[66] Applying the approach identified in **The Rainy Sky**, I do not think that either of the rival constructions is inconsistent with business common sense nor do I think that either of the rival constructions is more consistent with business common sense than the other. I think that this is a case where an appeal to commercial purpose or business common sense does not advance the arguments as to what the parties are to be taken to have meant by the words which they have used. . . .*
>
> *[87] In my judgment, the single most important matter in this case is the language used by the parties. . . . Further, I do not think that an appeal to the commercial purpose of the provisions, nor to business common sense, really advances either side's argument.*[2]

---

[2] Similarly, in **Aston Hill Financial Inc. v African Minerals Finance Ltd** [2012] EWHC 2173 (Comm.) (attached as Exhibit A–3), the Judge noted the following in relation to the attempt of both sides to argue from "business common sense":

> *For all these reasons, I have found the plea by both sides that I should construe the Facility in accordance with business common sense difficult to apply in the particular circumstances of the present case. The arguments fly in different directions or at least are not clear-cut. In such circumstances, I think there is considerable difficulty – and potential danger – in the court relying upon such arguments in reaching its conclusion . . . .*
>
> *So I turn to consider the wording of the relevant Clauses of the Facility.*

REPLY DECLARATION OF STEPHEN AULD QC
5

Secondly, in *Jackson* [2012] EWHC 2060 (Ch)**,** the court contemplated implying an additional term where enforcing the "*express terms*" would lead to "*consequences . . . contradict[ing] what a reasonable person would understand the contract to mean.*" Here, there is no express term that would lead to such consequences.

## II. LEGAL ASSIGNMENT (ONSLOW REBUTTAL DECLARATION ¶¶ 17-18)

11. The statements in the Onslow Rebuttal Declaration (at paragraph 17(iii)) that "*a legal assignment can be completed, and legal title to sue can be acquired, <u>after</u> proceedings are begun*" (original emphasis) and (at paragraph 17(iv)) that it "*is no longer English law*" "*that such a defect in title could not be cured by post-issue amendment*" do not correctly describe the current position in English law.

12. More specifically, as described in the Auld Declaration (at paragraph 25), the Chancery Division held in the 2011 case of **Paratus AMC Ltd v. Countrywide** (attached as Exhibit B–22 to the Auld Declaration) that the "*legal proceedings cannot themselves constitute sufficient notice for the purpose of those proceedings.*" Indeed, **Chitty on Contracts** (13th Ed.) (attached as Exhibit A–4), another leading English treatise, states (at paragraph 19-016) the well-settled English law that although the Property Act on its face "*does not prescribe any limit of time within which notice must be given, . . . [n]otice must be given before the assignee starts his action, though failure to do this will not prevent the assignee from proceeding with his action on the footing that he is an equitable assignee.*" **Treitel, The Law of Contract** (13th Ed.) (attached as Exhibit A–5) likewise states (at paragraph 15-020) that notice "*is effective so long as it is given before action is brought.*"

13. The cases cited in the Onslow Rebuttal Declaration (at paragraphs 17(iv) and 18(ii) footnote 6) are not to the contrary, and are not cited in *Chitty* and

REPLY DECLARATION OF STEPHEN AULD QC
6

*Treitel* in relation to whether notice is required before an action is brought. In fact, none of the cases directly addresses whether notice under the Property Act must occur before the action is filed. Those courts that did address other aspects of the notice requirement (***Van Lynn Developments Ltd v. Pelias Construction Co Ltd*** [1969] 1 QB (CA); ***Denney, Gasquet and Metcalfe v. Conklin*** [1913] 3 KB 177) found a valid legal assignment where notice *pre-dated* initiation of the litigation.

## III. EQUITABLE ASSIGNMENT (ONSLOW REBUTTAL DECLARATION ¶¶ 19-34)

### Joinder (Onslow Rebuttal Declaration ¶¶ 19-25)

14. The Onslow Rebuttal Declaration's characterization (at paragraph 22) of the joinder requirement as "merely procedural, and so can be dispensed with in an appropriate case" is potentially misleading and does not reflect English law.

15. Regardless of whether the joinder requirement is *"a rule of practice,"* ***Butterworths Common Law Series: The Law of Contract*** (4th Ed.) (at paragraph 6.273) (attached as Exhibit A–6) makes clear that this rule is "***rarely departed from*** *so that although an assignee is allowed to commence an action in his or her own name,* ***unless there are special circumstances****, his or her relief prior to joining the assignor is generally limited to obtaining interim relief*" (emphasis added) (citing ***Performing Right Society Ltd v. London Theatre of Varieties Ltd*** [1924] AC 1 at 14 (HL)). Furthermore, the Onslow Rebuttal Declaration's citation (at paragraph 23) to ***Kapoor v. National Westminster Bank plc*** [2011] EWCA Civ 1083 (at 282) involved the special circumstances referred to in the passage from ***Butterworths*** cited above—namely, that the assignor "*expressly agreed that it would not prove for, or vote in respect of, or assert any claim to any part of [its] debt . . . and*

REPLY DECLARATION OF STEPHEN AULD QC
7

*it would not exercise any rights of a creditor in respect of the assigned debt."*[3]

16. The assignors' dissolutions here do not constitute special circumstances, as the Court of Appeal recognized in *M.H. Smith (Plant Hire) Ltd v. Mainwaring* [1986] 2 BCC 99262, 99265 (attached as Exhibit B–23 to the Auld Declaration):

> *If the assignor or, as in this case, the assured is no longer in existence, because the company has dissolved, then unfortunately for the insurer none of those things can be done by him, since he himself has no cause of action against the wrongdoer.*

17. Although the Onslow Rebuttal Declaration states (at paragraph 25(iii)) that this *"could certainly not stand as English law now,"* it cites no case that has overruled *M.H. Smith* (and as far as I am aware, no case has done so). Indeed, *M.H. Smith* was cited without criticism in paragraph 15.007 of *Treitel*, a book published in 2011, in its discussion of the law of assignment:

> *[T]he action against the debtor need no longer be brought in the name of the assignor: he is simply joined as co-claimant if he is willing to co-operate with the assignee, and as co-defendant if he is not, i.e. if he wishes to dispute the validity of the assignment.* ***The machinery of joining the assignor as a party to the action may, however, break down if the assignor has ceased to exist, e.g. because the assignor is a company which has been dissolved.***

(attached as Exhibit B–2 to the Auld Declaration) (emphasis added). In that regard, the Onslow Rebuttal Declaration's attempt to distinguish this case as one "about subrogation rather than assignment" is besides the point. Both *M.H. Smith* and *Treitel* explicitly reference assignment in their analyses (and assignment is in any event similar to subrogation, as described at paragraph 29, footnote 7 of the Auld Declaration).

---

[3] The Onslow Rebuttal Declaration also cites (at paragraph 23) *Raiffeisen Zentralbank Osterreich AG v. Five Star Trading LLC* [2001] QB 825 (CA) (at 382), which is inapposite because the assignor was a defendant and therefore "*all relevant parties [we]re before the court.*"

REPLY DECLARATION OF STEPHEN AULD QC
8

**Pre-Existing Interest (Onslow Rebuttal Declaration ¶¶ 26-34)**

18. The statement in the Onslow Rebuttal Declaration (at paragraph 28) that *"[n]o English authority makes it a condition of assigning a right of action that there be a 'pre-existing' commercial interest"* does not correctly describe the English cases.

19. As described in the Auld Declaration (at paragraph 32), English courts have required "*a clear **pre-existing** interest in the fruits of the action*" before asserting claims as an assignee.

20. The Onslow Rebuttal Declaration does not cite any cases in support of its suggestion (at paragraph 29) that "*a pre-existing interest is an example of a genuine interest, rather than part of its definition*" (original emphasis). Instead, it relies (at paragraph 31) on **Massai Aviation Services v. Attorney General** [2007] UKPC 12, which does not describe a pre-existing interest merely as an "example" and in any event is of limited relevance because it is a Privy Council decision regarding Bahamian law. Although the Onslow Rebuttal Declaration also asserts (at paragraph 33, footnote 13) that the English court in **Tinseltime Ltd v. Roberts** [2011] EWHC 1199 (TCC) followed **Massai**, that case (1) did not address squarely whether the assignee's interest in the cause of action must pre-exist the assignment and (2) involved a pre-existing interest in any event.

## CONCLUSION

21. For the reasons given above and in the Auld Declaration, the English cases do not support a finding here of a valid assignment of the right to sue.

1  I declare under penalty of perjury under the laws of the United States of America
2  that the foregoing is true and correct.

    Executed on this 30th day of August, 2012, in London, England.

                                                   **STEPHEN AULD QC**