# EXHIBIT A-1

*TRUSTS, WILLS AND PROBATE LIBRARY*

# SNELL'S EQUITY

THIRTY-SECOND EDITION

### General Editor

JOHN McGHEE QC
*M.A. (Oxon)*
*of Lincoln's Inn, Barrister*

### Contributors

STUART BRIDGE
*M.A. (Cantab)*
*Fellow of Queens' College, Cambridge;*
*Lecturer in Law, University of Cambridge; Barrister and Bencher of the Middle Temple; Recorder; Law Commissioner 2001–2008*

MATTHEW CONAGLEN
*LL.B.(Hons) (Auck.); LL.M. (Mich.); Ph.D. (Cantab.)*
*University Senior Lecturer, Faculty of Law, Cambridge; Fellow and Director of Studies in Law, Trinity Hall, Cambridge; Door Tenant at XXIV Old Buildings, Lincoln's Inn; Barrister and Solicitor of the High Court of New Zealand*

PAUL S. DAVIES
*M.A. (Cantab), Barrister of Lincoln's Inn; Fellow of Gonville and Caius College; Newton Trust Lecturer in Law in the University of Cambridge*

JAMES EDELMAN
*B. Ec, LL.B. (Hons) (UWA), B. Comm. (Murd), B.A. (Hons), D. Phil (Oxon)*
*Professor of the Law of Obligations, University of Oxford; Fellow and Director of Studies in Law, Keble College; of Lincoln's Inn, Barrister*

STEVEN ELLIOT
*B.A.(Hons), J.D.(Hons), D.Phil (Oxon)*
*of Lincoln's Inn, Barrister*

DAVID FOX
*Ph.D. (Cantab.)*
*of Lincoln's Inn, Barrister*
*and Fellow in Law, St John's College, Cambridge*

RICHARD NOLAN
*M.A. (Cantab); Reader in Corporate & Trust Law at the University of Cambridge and Fellow of St John's College, Cambridge*
*Barrister (Middle Temple) and Door Tenant at Erskine Chambers, London*

JANET O'SULLIVAN
*M.A., Ph.D. (Cantab); University Senior Lecturer, Faculty of Law, University of Cambridge; Fellow and Director of Studies in Law, Selwyn College, Cambridge.*

| | |
|---|---|
| First Edition | (1868) by Edmund Henry Turner Snell |
| Second Edition | (1872) by J. R. Griffith |
| Third Edition | (1874) by J. R. Griffith |
| Fourth Edition | (1878) by Archibald Brown |
| Fifth Edition | (1880) by Archibald Brown |
| Sixth Edition | (1882) by Archibald Brown |
| Seventh Edition | (1884) by Archibald Brown |
| Eighth Edition | (1887) by Archibald Brown |
| Ninth Edition | (1889) by Archibald Brown |
| Tenth Edition | (1892) by Archibald Brown |
| Eleventh Edition | (1894) by Archibald Brown |
| Twelfth Edition | (1898) by Archibald Brown |
| Thirteenth Edition | (1901) by Archibald Brown |
| Fourteenth Edition | (1905) by Archibald Brown |
| Fifteenth Edition | (1908) by Archibald Brown |
| Sixteenth Edition | (1912) by Archibald Brown |
| Seventeenth Edition | (1915) by H. Gibson Rivington and A. Clifford Fountaine |
| Eighteenth Edition | (1920) by H. Gibson Rivington and A. Clifford Fountaine |
| Nineteenth Edition | (1925) by H. Gibson Rivington and A. Clifford Fountaine |
| Twentieth Edition | (1929) by H. Gibson Rivington and A. Clifford Fountaine |
| Twenty First Edition | (1934) by H. Gibson Rivington |
| Twenty Second Edition | (1939) by H. Gibson Rivington |
| Twenty Third Edition | (1947) by R. E. Megarry |
| Twenty Fourth Edition | (1954) by R. E. Megarry and P. V. Baker |
| Twenty Fifth Edition | (1960) by R. E. Megarry and P. V. Baker |
| Second impression, revised | (1963) by R. E. Megarry and P. V. Baker |
| Twenty Sixth Edition | (1966) by R. E. Megarry and P. V. Baker |
| Twenty Seventh Edition | (1973) by R. E. Megarry and P. V. Baker |
| Twenty Eighth Edition | (1982) by P. V. Baker and P. St.J. Langan |
| Twenty Ninth Edition | (1990) by P. V. Baker and P. St.J. Langan |
| Thirtieth Edition | (1999) By J. A. McGhee |
| Thirty-First Edition | (2005) By J. A. McGhee |
| Thirty-Second Edition | (2010) By J. A. McGhee |

Published in 2010 by Thomson Reuters (Legal) Limited (Registered in England & Wales, Company No 1679046. Registered Office and address for service: 100 Avenue Road, London NW3 3PF) trading as Sweet & Maxwell

*For further information on our products and services, visit www.sweetandmaxwell.co.uk*

Typeset by YHT, London
Printed in the UK by CPI William Clowes Beccles NR34 7TL

*No natural forests were destroyed to make this product; only farmed timber was used and re-planted.*

A CIP catalogue record for this book is available from the British Library.

ISBN 978-0-414-04286-5

Thomson Reuters and the Thomson Reuters logo are trademarks of Thomson Reuters. Sweet & Maxwell ® is a registered trademark of Thompson Reuters (Legal) Limited

*Crown copyright material is reproduced with the permission of the Controller of HMSO and the Queen's Printer for Scotland.*

*All rights reserved.* No part of this publication may be reproduced or transmitted, in any form or by any means, or stored in any retrieval system of any nature, without prior written permission, except for permitted fair dealing under the Copyright, Designs and Patents Act 1988, or in accordance with the terms of a license issued by the Copyright Licensing Agency in respect of photocopying and/or reprographic reproduction. Application for permission for other use of copyright material including permission to reproduce extracts in other published works shall be made to the publishers. Full acknowledgement of author, publisher and source must be given.

© 2010 Thomson Reuters (Legal) Limited

Case 2:11-cv-08896-MRP-MAN   Document 90-3   Filed 08/30/12   Page 4 of 9   Page ID #:9313

### 3.—EQUITABLE ASSIGNMENT

#### 1. Relation to Legal Assignment

3–012   An assignment which does not comply with the statutory requirements is not necessarily ineffectual, for it may operate as an equitable assignment. "The statute does not forbid or destroy equitable assignments or impair their efficacy in the slightest degree."[59] An assignment which fails to satisfy the statute because it is not absolute but conditional, or by way of charge, or because it is only an assignment of part of the debt[60]) is nevertheless fully effective in equity. So also, an absolute assignment may at first be merely equitable, and then, when the necessary notice is given, become statutory.

#### 2. Essentials of Equitable Assignment

3–013   In determining whether there has been a valid equitable assignment, the following points must be considered.

3–014   *(a) Form of assignment.*   No particular form is required for a valid equitable assignment, whether voluntary or for value.[61] Equity has always looked to the intent rather than the form, and all that is needed is a sufficient outward expression of an intention to make an immediate disposition of the assignor's right.[62]

> "It may be couched in the language of command. It may be a courteous request. It may assume the form of mere permission. The language is immaterial if the meaning is plain."[63]

For example, in *William Brandt's Sons & Co v Dunlop Rubber Co Ltd*,[64] merchants agreed with a bank by whom they were financed that purchasers of goods sold by the merchants should pay the price directly to the bank. When the merchants sold goods, the bank forwarded to the buyers notice in writing that the merchants had made over to the bank the right to receive the purchase-money, and requested the buyers to sign

---

[59] *William Brandt's Sons & Co v Dunlop Rubber Co Ltd* [1905] A.C. 454 at 462, per Lord Macnaghten.
[60] On assignments of part of a debt, see J.C. Hall [1959] C.L.J. 99; M.C. Cullity and H.A.J. Ford (1966) 30 Conv.(N.S.) 286 (dealing particularly with gifts of future income).
[61] *William Brandt's Sons & Co v Dunlop Rubber Co Ltd* [1905] A.C. 454 at 462; *IRC v Electric and Musical Industries Ltd* [1949] 1 All E.R. 120 at 126; affirmed [1950] 2 All E.R. 261; *Wale, Re* [1956] 1 W.L.R. 1346 at 1350; *Letts v IRC* [1957] 1 W.L.R. 201 at 214.
[62] *Finlan v Eyton Morris Winfield* [2007] EWHC 914 (Ch).
[63] *William Brandt's Sons & Co v Dunlop Rubber Co Ltd* [1905] A.C. 454 at 462, per Lord Macnaghten; *Coulter v Chief Constable of Dorset Police* [2003] EWHC 3391 (Ch); affirmed on other grounds [2004] EWCA Civ. 1259.
[64] *William Brandt's Sons & Co v Dunlop Rubber Co Ltd* [1905] A.C. 454.

an undertaking to remit the purchase-money to the bank. It was held that there was evidence of an equitable assignment of the debt with notice to the buyers; the assignment was by way of charge, and so could not be statutory. So also, where a man handed some insurance policies on his life to his son with a request to erect a tombstone for him and pay for it out of the policy moneys, it was held that there was a valid equitable assignment of the policies by way of a charge for the cost of the tombstone.[65]

Usually an equitable assignment will fall under one of the following three heads,[66] namely:

(i) a direct assignment to the assignee or to trustees for him, or a similar contract to assign[67];

(ii) a direction to the debtor to pay the debt to the assignee or, where the chose in action is held on trust, a direction to the trustee to hold it on trust for the assignee[68];

(iii) a declaration of trust by the assignor for the assignee.[69]

*(b) Mandate or authority not enough.* Despite the lack of formal requirements, there must be some transaction which sufficiently manifests an intention to assign, i.e. assure or transfer. A mere mandate or authority is not enough.[70] Thus if A owes money to B, who gives C authority to receive it and pay it to D, there is no assignment even if C has promised D to pay the money to him.[71]

3–015

---

[65] *Thomas v Harris* [1947] 1 All E.R. 444.
[66] See *Timpson's Executors v Yerbury* [1936] 1 K.B. 645 at 664.
[67] See e.g. *Cotton v Heyl* [1930] 1 Ch. 510; *Warren, Ex p. Wheeler, Re v The Trustee in Bankruptcy* [1938] Ch. 725.
[68] *Chrimes, Re* [1917] 1 Ch. 30, at 36; *Wale, Re* [1956] 1 W.L.R. 1346 at 1350; and see *Burn v Cavalho* (1839) 4 My. & Cr. 690; *Rodick v Gandell* (1852) 1 De G. M. & G. 763 at 777, per Lord Truro L.C.; *Diplock v Hammond* (1854) 5 De G. M. & G. 320; this may amount to a trust rather than an assignment: see *Grey v IRC* [1958] Ch. 375 at 381 per Upjohn J.; on appeal [1958] Ch. 690 at 710 per Lord Evershed M.R., and at 722 per Ormerod L.J.; affirmed [1960] A.C. 1 at 16 per Lord Radcliffe; as to the question of direction to the debtor (and not to the trustee) to hold on trust for the assignee see *M'Fadden v Jenkyns* (1842) 1 Hare 458; affirmed 1 Ph. 153; and J.C. Hall [1959] C.L.J. 108–109.
[69] This may be not an assignment, but the creation of a derivative trust, or sub-trust: see (1958) 74 L.Q.R. 180, 182. Note also that if the assignor purports to make a direct assignment by gift which is incomplete, the court will not perfect it by treating it as a declaration of trust: *Wale, Re* [1956] 1 W.L.R. 1346 at 1349.
[70] *Bell v London & North Western Ry* (1852) 15 Beav. 548; *Ex p. Hall* (1878) 10 Ch. D. 615; *Percival v Dunn* (1885) 29 Ch.D. 128; *Gunsbourg, Re* (1919) 88 L.J.K.B. 479; *Williams, Williams v Ball, Re* [1917] 1 Ch. 1; *Rekstin v Severo, and Bank for Russian Trade* [1933] 1 K.B. 47; *Timpson's Executors v Yerbury* [1936] 1 K.B. 645; *James Talcott Ltd v John Lewis & Co Ltd* [1940] 3 All E.R. 592; *Kent and Sussex Sawmills Ltd, Re* [1947] Ch. 177; *Curran v Newpark Cinemas Ltd* [1951] 1 All E.R. 295; *Wale, Re* [1956] 1 W.L.R. 1346.
[71] *Rodick v Gandell* (1852) 1 De G. M. & G. 763.

A cheque, too, "is only a revocable mandate",[72] and not an assignment of any money standing to the credit of the drawer in his bank account.[73] So, too, a revocable nomination of rights in a pension fund which is not to take effect until the death of the nominator is no assignment.[74]

In each case it is a question of construing the language used in order to determine whether what was intended was an assignment or no more than an authorisation.[75]

3–016    *(c) Identified chose.* The assignment must sufficiently identify the chose which is being assigned: "in order to constitute an equitable assignment there must be an engagement to pay out of the particular fund."[76] Thus if C merely directs D to pay a specified sum to X, this will not assign any money which D in fact owes C.[77]

Whether an assignment of a specific but unidentified part of a chose is effective appears to depend on the nature of the chose. Thus a sale of 500 tons of wheat from a particular shipment of 1,000 tons does not amount to an equitable assignment since it does not relate to any particular 500 tons from amongst the 1,000 tons.[78] But an assignment of a debt of £100 out of a greater sum due by the debtor to the assignor is effective.[79]

3–017    *(d) Notice to the assignee.* Whether or not notice to the assignee is required would seem to depend on the form of the assignment in question.

It appears that an assignment made by a direction given by the assignor to the debtor or trustee is not binding on the assignor or the assignee unless it either is made by prior arrangement with the assignee or has been communicated to him.[80] Thus if D owes money to C, an assignment by C to X made between C and X binds them forthwith, even if D has no notice of it[81]; but if the assignment to X is made between C and D, C and D are not bound until X has notice of it.[82] Where the assignee is made aware of the assignment by a letter sent by post it has

---

[72] *Beaumont, Re* [1902] 1 Ch. 889 at 894. per Buckley J.
[73] *Hopkinson v Forster* (1874) L.R. 19 Eq. 74; and see *Brown, Shipley & Co v Kough* (1885) 29 Ch.D. 848 at 875 per Fry L.J.; and see above para.3–006.
[74] *Danish Bacon Co Ltd Staff Pension Fund Trusts, Re* [1971] 1 W.L.R. 248.
[75] See e.g. *Comptroller of Stamps (Vic) v Howard-Smith* (1936) 54 C.L.R. 614.
[76] *Watson v Duke of Wellington* (1830) 1 Russ. & M. 602 at 605, per Leach M.R; *Palmer v Carey* [1926] A.C. 703 at 706; *Swiss Bank Corp v Lloyds Bank Ltd* [1982] A.C. 584 at 613; *Compaq Computer v Abercorn Group* [1993] B.C.L.C. 602 at 619.
[77] *Percival v Dunn* (1885) 29 Ch.D. 128.
[78] *Wait, Re* [1927] 1 Ch. 606; *Goldcorp Exchange Ltd, Re* [1995] 1 A.C. 74; and para.22–018 below.
[79] *Brice v Bannister* (1878) 3 Q.B.D. 569; *Gunsbourg, Re* (1919) 88 L.J.K.B. 479.
[80] *Hamilton, FitzGeorge v FitzGeorge, Re* (1921) 124 L.T. 737 at 739; *Morrell v Wootten* (1852) 16 Beav. 197; *Rekstin v Severo and Bank for Russian Trade Ltd* [1933] 1 K.B. 47; *Curran v Newpark Cinemas Ltd* [1951] 1 All E.R. 295.
[81] *Gorringe v Irwell India Rubber and Gutta Percha Works* (1886) 34 Ch.D. 128; below para.3–020.
[82] *Morrell v Wootten* (1852) 16 Beav. 197.

been held that the assignment is effective as from the date of posting the letter[83] but this is to be doubted.[84]

It seems that an assignment made by a direct transfer to the assignee is effective even if the assignee is unaware of it.[85] This accords with the general principle that a gift by deed is effective to vest the property in the donee immediately subject to his right to repudiate it when he becomes aware of the gift.[86] Similarly an assignment made by declaration of trust would not appear to require the knowledge of the assignee.[87]

*(e) Writing sometimes required.* By statute, "a disposition of an equitable interest or trust subsisting at the time of the disposition, must be in writing", duly signed.[88] Writing is accordingly required for any equitable assignment that falls within this provision, as where an interest under a trust is directly assigned to the assignee or to trustees for him, or the trustees are directed to hold on trust for him instead of for the assignor.[89] But equitable assignments which are not subject to this or some similar statutory requirement[90] may be made in any way, even by word of mouth.[91] 3–018

*(f) Value sometimes required.* Whether or not value is required for the assignment depends on the type of chose which is being assigned and on the form of the assignment. It should be noted at the outset that the question of value arises only between the assignor and the assignee; the debtor is not permitted to refuse to pay the assignee on this ground.[92] 3–019

Value is necessary for an equitable assignment of rights of property not yet in existence,[93] or for the creation of a mere charge (as distinct from a complete transfer),[94] for such assignments are based on there being a contract that the property in question shall be assigned or stand charged.[95] Value is also required for an agreement to assign an existing chose in action at some time in the future.

---

[83] *Alexander v Steinhardt, Walker & Co* [1903] 2 K.B. 208.
[84] See *Timpson's Executors v Yerbury* [1936] 1 K.B. 645 at 657; and cf. *Holt v Heatherfield Trust* [1942] 2 K.B. 1 as to the date of the effectiveness of a notice to the debtor in the case of a statutory assignment.
[85] *Way's Trusts, Re* (1864) 2 De G. J. & Sm. 265; *Grey v Australian Motorists & General Insurance Co Pty Ltd* [1976] 1 N.S.W.L.R. 669; but see *Timpson's Executors v Yerbury* [1936] 1 K.B. 645 at 658; *Shamia v Joory* [1958] 1 Q.B. 448 at 460.
[86] *Standing v Bowring* (1885) 31 Ch. D. 282.
[87] See *Middleton v Pollock* (1876) 2 Ch. D. 104.
[88] LPA 1925 s.53(1)(c), discussed below para.22–040.
[89] *Grey v IRC* [1960] A.C. 1.
[90] e.g. LPA 1925 s.40, on an assignment of future rents: *Whitting, Ex p. Hall, Re* (1879) 10 Ch.D. 615. See now Law of Property (Miscellaneous Provisions) Act 1989 s.2.
[91] *Tibbits v George* (1836) 5 Ad. & E. 107; *Gurnell v Gardner* (1863) 4 Giff. 626.
[92] *Walker v Bradford Old Bank* (1884) 12 Q.B.D 511.
[93] Below para.3–030.
[94] *Earl of Lucan, Re* (1890) 45 Ch.D. 470.
[95] See *Matthews v Goodday* (1861) 31 L.J.Ch. 282.

But value is not required for other equitable assignments of equitable choses provided the assignor has done everything required to be done by him in order to transfer the chose in action.[96] Although the contrary view has been expressed,[97] it is has been established that the value is also not required for other equitable assignments of legal choses in action.[98] Thus an assignment of part of a debt is valid despite the absence of consideration.[99] Also an assignment by declaration of trust is effective since a completely constituted trust is valid without consideration.[100]

The application of the doctrine that the assignor must have done everything required to be done by him to transfer the chose in action gives rise to difficulty in relation to direct assignments of legal choses which are capable of assignment within s.136. It has been held that an assignment of a legal chose in action will be valid in equity notwithstanding that no notice has been given to the debtor under s.136 since the giving of such notice is not something required to be done by the assignor.[101] However, it is not clear whether an assignor will have been treated as having done everything required if the assignment itself is made orally and not in writing.[102]

3–020   *(g) Notice not essential but desirable.* An equitable assignment made between the assignor and assignee is complete and binding even if no notice is given to the debtor.[103] And as a trustee in bankruptcy takes subject to all equities affecting the property in the hands of the bankrupt, the assignment will prevail against the subsequent title of the assignor's trustee in bankruptcy, even though the notice required to perfect the

---

[96] *Kekewich v Manning* (1851) 1 De G. M. & G. 176; *Voyle v Hughes* (1854) 2 Sm. & G. 18; *Nanney v Morgan* (1887) 37 Ch.D. 346; *McArdle, Re* [1951] Ch. 669; *Wale, Re* [1956] 1 W.L.R. 1346.

[97] *Glegg v Bromley* [1912] 3 K.B. 474 at 491 (explained in *German v Yates* (1915) 32 T.L.R. 52 and *Holt v Heatherfield Trust* [1942] 2 K.B. 1); *McArdle, Re* [1951] Ch. 669 at 673.

[98] *Holt v Heatherfield Trust Ltd* [1942] 2 K.B. 1; and see *Fortescue v Barnett* (1834) 3 My. & K. 36; *Blakely v Brady* (1839) 3 Dr. & Wal. 311; *Pearson v Amicable Assurance Office* (1859) 27 Beav. 229; *King, Re* (1879) 14 Ch.D. 179; *Patrick, Re* [1891] 1 Ch. 82; *Griffin, Re* [1899] 1 Ch. 408; *Pulley v Public Trustee* [1956] N.Z.L.R. 771; *Norman v Federal Taxation Commissioner* (1963) 109 C.L.R. 9; *Shepherd v Federal Commissioner of Taxation* (1965) 113 C.L.R. 385; *Olsson v Dyson* (1970) 120 C.L.R. 365; *Corim v Patton* (1990) 169 C.L.R. 525; Sheridan, 33 Canadian Bar Review 284; 59 L.Q.R. 58, 129, 208; 67 L.Q.R. 295; Hall, 59 C.L.J. 99; Marshall, *The Assignment of Choses in Action* (1950) Ch.4.

[99] *Shepherd v Federal Commissioner of Taxation* (1965) 113 C.L.R. 385; see *McArdle, Re* [1951] Ch. 669.

[100] *Ellison v Ellison* (1802) 6 Ves. 656; *M'Fadden v Jenkyns* (1842) 1 Hare 458.

[101] *Griffin, Re* [1899] 1 Ch. 408; *Holt v Heatherfield Trust Ltd* [1942] 2 K.B. 1; *Pulley v Public Trustee* [1956] N.Z.L.R. 771; *Magee v UDT Finance Ltd* [1983] N.Z.L.R. 438.

[102] See Treitel, *Law of Contract* (12th edn) para.15–035 for the view that an oral assignment is sufficient; and see *German v Yates* (1915) 32 T.L.R 52 where the assignment was not in writing; but cf. *Olsson v Dyson* where an oral assignment was held to be insufficient and see *Corim v Patton* (1990) 169 C.L.R. 525 and Meagher Gummow & Lehane, *Equity Doctrine and Remedies* (3rd edn), paras 614–630.

[103] *Donaldson v Donaldson* (1854) Kay 711; *Gorringe v Irwell India Rubber and Gutta Percha Works* (1886) 34 Ch.D. 128; *Ward and Pemberton v Duncombe* [1893] A.C. 369 at 392.

assignment as against third parties is not given until after the trustee in bankruptcy has given notice to the debtor of his claim to the debt.[104] The same principle applies to a judgment creditor of the assignor; he can only make the debt available for payment of the judgment subject to all equities affecting it. Accordingly, if he attaches the debt after the assignment has been made, and the debtor pays the money to him despite receiving notice of the assignment, the assignee can compel the debtor to pay again.[105]

Notice of the assignment should, however, always be given to the debtor or trustee for four reasons:

(i) The debtor or trustee will be under no liability to the assignee if before receiving notice of the assignment he pays or settles with the original creditor[106] or gives him a negotiable instrument, e.g. a cheque or promissory note[107]; but if he disregards the notice he must pay again.[108]

(ii) Notice to the debtor or trustee prevents him from setting up against the assignee any new and independent equities which may arise between the debtor and the assignor.[109]

(iii) Notice in writing is necessary to preserve the assignee's priority against subsequent assignees under the rule in *Dearle v Hall*.[110]

(iv) Notice, if in writing, may convert the assignment into a statutory assignment, giving the assignee the status of a person entitled to the debt at law, and not merely in equity.

### 3. Effect of Equitable Assignment

The effect of an equitable assignment depends upon whether or not the whole interest in the chose has been vested in the assignee.    3–021

*(a) Whole interest assigned.* When the chose is merely equitable and the whole interest in it has been vested in the assignee, equity has always    3–022

---

[104] *Wallis, Ex p. Jenks, Re* [1902] 1 K.B. 719; *Anderson, Re* [1911] 1 K.B. 896.
[105] *Yates v Terry* [1902] 1 K.B. 527.
[106] *Stocks v Dobson* (1853) 4 De G.M. & G. 11; *Donaldson v Donaldson* (1854) Kay 711; *Lord Southampton's Estate, Re* (1880) 16 Ch. D. 178 at 186; *Herkules Piling v Tilbury Construction* (1992) 61 B.L.R. 107.
[107] *Bence v Shearman* [1898] 2 Ch. 582.
[108] *Brice v Bannister* (1878) 3 Q.B.D. 569 (where the assignment was equitable despite references to the statute: see *Durham Bros v Robertson* [1898] 1 Q.B. 765 at 773–774); *Yates v Terry*, [1902] 1 K.B. 527; *Walter & Sullivan Ltd v J Murphy & Sons Ltd* [1955] 2 Q.B. 584 at 588; *Deposit Protection Board v Dalia* [1994] 2 A.C. 367 at 381 per Simon Brown L.J., at 386–387 per Russell L.J. See above at 382 where Simon Brown L.J. took the view that even after notice had been given the debtor was to be regarded as liable to the assignor.
[109] See below para.3–024.
[110] *Dearle v Hall* (1828) 3 Russ. 1; below para.4–052.