# EXHIBIT A-6

# Butterworths Common Law Series
# The Law of Contract

Fourth Edition

**Series editor**

Andrew Grubb MA (Cantab), LLD (Lond), FMedSci
Senior Immigration Judge, Asylum and Immigration Tribunal;
Visiting Professor of Law, Cardiff Law School, Cardiff University

**General editor**

Michael Furmston TD, MA, BCL, LLM, Bencher of Gray's Inn
Emeritus Professor and Senior Research Fellow, University of Bristol;
Professor of Law and Dean of Law, Singapore Management University



LexisNexis

Exhibit A-6   -72-

Members of the LexisNexis Group worldwide

| | |
|---|---|
| United Kingdom | LexisNexis, a Division of Reed Elsevier (UK) Ltd, Halsbury House, 35 Chancery Lane, London, WC2A 1EL, and London House, 20–22 East London Street, Edinburgh EH7 4BQ |
| Australia | LexisNexis Butterworths, Chatswood, New South Wales |
| Austria | LexisNexis Verlag ARD Orac GmbH & Co KG, Vienna |
| Benelux | LexisNexis Benelux, Amsterdam |
| Canada | LexisNexis Canada, Markham, Ontario |
| China | LexisNexis China, Beijing and Shanghai |
| France | LexisNexis SA, Paris |
| Germany | LexisNexis Deutschland GmbH, Munster |
| Hong Kong | LexisNexis Hong Kong, Hong Kong |
| India | LexisNexis India, New Delhi |
| Italy | Giuffrè Editore, Milan |
| Japan | LexisNexis Japan, Tokyo |
| Malaysia | Malayan Law Journal Sdn Bhd, Kuala Lumpur |
| New Zealand | LexisNexis NZ Ltd, Wellington |
| Poland | Wydawnictwo Prawnicze LexisNexis Sp, Warsaw |
| Singapore | LexisNexis Singapore, Singapore |
| South Africa | LexisNexis Butterworths, Durban |
| USA | LexisNexis, Dayton, Ohio |

© Reed Elsevier (UK) Ltd 2010
Published by LexisNexis

All rights reserved. No part of this publication may be reproduced in any material form (including photocopying or storing it in any medium by electronic means and whether or not transiently or incidentally to some other use of this publication) without the written permission of the copyright owner except in accordance with the provisions of the Copyright, Designs and Patents Act 1988 or under the terms of a licence issued by the Copyright Licensing Agency Ltd, Saffron House, 6–10 Kirby Street, London EC1N 8TS. Applications for the copyright owner's written permission to reproduce any part of this publication should be addressed to the publisher.
Warning: The doing of an unauthorised act in relation to a copyright work may result in both a civil claim for damages and criminal prosecution.

Crown copyright material is reproduced with the permission of the Controller of HMSO and the Queen's Printer for Scotland. Parliamentary copyright material is reproduced with the permission of the Controller of Her Majesty's Stationery Office on behalf of Parliament. Any European material in this work which has been reproduced from EUR-lex, the official European Communities legislation website, is European Communities copyright.

A CIP Catalogue record for this book is available from the British Library.

ISBN 978-1-4057-5108-7

ISBN 978 1 4057 5108 7

Printed in the UK by CPI William Clowes Beccles NR34 7TL

Visit LexisNexis at www.lexisnexis.co.uk

**6.272** *Third Parties*

[5] See further para **6.329**.

## ASSIGNING LEGAL PROPERTY IN EQUITY

**6.273 Equitable assignments** A legal assignment which fails to satisfy the statutory requirements may still be upheld as a valid equitable assignment[1]. The main requirement for an equitable assignment is that the assignor must have an intention to dispose of the whole or part of his or her interest immediately[2]. The presence of this intention distinguishes such a transaction from an agreement to assign, a declaration of trust and a revocable mandate. In addition, the subject matter of an equitable assignment must be sufficiently identified[3].

Generally, consideration is not required for an equitable assignment[4]. There is no writing requirement and the assignment need not take any particular form[5]. It is suggested that it is also not necessary to give notice of the assignment to the assignee[6]. It is also not necessary to give notice of the assignment to the debtor[7] although it is advisable to give such notice for a number of reasons[8]. First, prior to receiving notice the debtor can obtain a good discharge from the assignor[9]. After notice is received, the debtor is in a precarious position because it owes its duty in law to the assignor and in equity to the assignee and, on one view cannot obtain a discharge by paying or performing for the assignee unless authorized by the assignor to do so. However, if the assignment is valid, the assignor could not deny it and so payment to the assignee will discharge the obligor. Nevertheless, the obligor takes a risk in paying the assignee if the notice of the assignment emanates from the assignee rather than the assignor. If the debtor becomes aware of a dispute between the assignor and assignee, then his or her best course is either to interplead or obtain an agreement from both the assignor and assignee as to their respective interests[10]. Second, the equitable assignee of a legal chose in action takes subject to the equities and notice is important in drawing a line between what equities the assignee does and does not take subject to[11]. Third, notice is important for the purposes of preserving priority[12].

If an assignment of a legal interest is upheld in equity and the assignee wishes to enforce that assignment, it is usually said that the assignor must be joined in that action either as co-plaintiff or co-defendant. Whether the requirement that the assignor be made a party is a rule of practice or a rule of substantive law is difficult to ascertain.[13] If it is a rule of practice it may be departed from[14]. Authority at the moment is clearly on the side of the rule being a rule of practice[15]. Much depends, however, on the view one takes of the effect of an equitable assignment of a legal chose in action. Prior to the Judicature Act 1873, in the case of an absolute assignment, equity would compel the assignor to allow the assignee to use the assignor's name but the action then proceeded at common law as if brought by the assignor[16]. The legal chose in action remained vested in the assignor and he or she retained a cause of action. From this the view may be taken that an equitable assignment of a legal chose in

1520

action, where that assignment is absolute, gives the assignee a right to require the assignor to protect the assignee's interest, but it does not give the assignee direct rights against the obligor[17]. The assignee therefore has to convince a court that there is a good reason to compel the assignor to act. This can be achieved by evidence of executed consideration, by evidence of the existence of a trust[18] or by evidence of a complete gift. If that is correct, it would follow that the joining of the assignor is a matter of substantive law – there is a certain logic in this because the assignee wishes to claim a common law remedy but only has an equitable right[19]. Where the assignment concerns part of a debt, this was only ever recognised in equity and was therefore enforced in equity. Therefore, the assignee in such a case was the proper plaintiff, although all other persons having an interest in the debt were, as a matter of procedure, necessary parties[20]. On another view, however, the effect of equity upholding an absolute assignment of a legal interest is that the assignee becomes the owner and controller of the legal chose in action, he or she has an equitable cause of action which can be enforced in his or her own name so that the joining of the assignor becomes a matter of procedure for the purposes of making sure all interests are dealt with and the obligor knows where he or she stands[21]. Thus the assignor is not required for the prosecution of the claim and can be joined either as co-plaintiff or co-defendant[22]. There is some logic in this view to the extent that if equity is upholding the assignment as an assignment, why should the assignee's interest be dependent upon action by the assignor? However, under the first view, simply because the assignee's rights are enforced by compelling the assignor to act does not take away from the fact that equity upholds the transaction as an assignment[23]. Moreover, the second view does not explain how the assignee's equitable interest becomes capable of enforcing a legal chose in action, especially when, as would appear to be the case, the assignor is still considered to retain a cause of action in the legal chose in action (be it an empty shell)[24] even where the assignment was intended to be absolute[25]. Ultimately, there is only one cause of action[26]. It should be added that the 'rule of practice' is rarely departed from so that although an assignee is allowed to commence an action in his or her own name, unless there are special circumstances, his or her relief prior to joining the assignor is generally limited to obtaining interim relief[27]. Moreover, where the assignor retains an interest, if he or she intends to enforce that interest, they must generally join the assignee even if, in the case of the assignment of part of a debt, they only intend to enforce that part of the debt not assigned[28].

1   *William Brandt's & Sons v Dunlop Rubber Co Ltd* [1905] AC 454 at 461 per Lord Macnaghten.
2   *Norman v Federal Comr of Taxation* (1963) 109 CLR 9; *William Brandt's Sons & Co v Dunlop Rubber Co Ltd* [1905] AC 454.
3   *Percival v Dunn* (1885) 29 Ch D 128. See also *Brice v Bannister* (1878) 3 QBD 569 and *Palmer v Carey* [1926] AC 703.
4   *Holt v Heatherfield* [1942] 2 KB 1. See further para **6.289**.
5   *William Brandt's Sons & Co v Dunlop Rubber Co Ltd* [1905] AC 454 at 462 per Lord Macnaghten.
6   See *Gorringe v Irwell India Rubber Works* (1886) 34 Ch D 128; *Re City Life Assurance Co Ltd* [1926] Ch 191; *Weddell v J A Pearce & Major* [1988] Ch 26. Cf *Herkules*

**6.273** *Third Parties*

7. *Piling Ltd v Tilbury Construction Ltd* (1992) 61 BLR 107. Cf *Mountain Road (No 9) Ltd v Michael Edgley Corpn Pty Ltd* [1999] 1 NZLR 335 and see GJ Tolhurst 'Equitable Assignment of Legal Rights: A Resolution to a Conundrum' (2002) LQR 98. See further *Warner Bros Records Inc v Rollgreen Investments Ltd* [1976] QB 430; *Three Rivers District Council v Bank of England* [1996] QB 292 at 313–315 per Peter Gibson LJ and see *Baytur SA v Finagro Holding SA* [1992] 1 QB 610 at 619 (exercise of right to arbitration, where it is suggested, without ruling on the point, that not only notice to the arbitrator is required but also the consent of the arbitrator and the party in the position of the obligor). Notice to the agent of the debtor will equate with notice to the debtor: *Magee v UDC Finance Ltd* [1983] NZLR 438.
8. See *Stamps Comptroller v Howard-Smith* (1936) 54 CLR 614 at 622 per Dixon J.
9. *Stocks v Dobson* (1853) 4 De GM & G 11, 43 ER 411; *Squires v S A Steel & Sheet Pty Ltd* (1987) 45 SASR 142.
10. See *Jones v Farrell* (1857) 1 De G & J 208: 44 ER 703. Cf *Deposit Protection Board v Dalia* [1994] 1 All ER 539 at 549 per Simon Brown LJ (overruled on another point [1994] 2 AC 367). See also *Durham Bros v Robertson* [1898] 1 QB 765 at 770 per Chitty LJ (an equitable assignee cannot give a valid discharge for a debt to the debtor unless expressly empowered).
11. See further para **6.332**.
12. Such notice needs to be given in writing, see Law of Property Act 1925, s 137(3).
13. See further GJ Tolhurst 'Equitable Assignment of Legal Rights: A Resolution to a Conundrum' (2002) LQR 98. See also Marcus Smith 'Equitable Owners Enforcing Legal Rights?' (2008) 124 LQR 517.
14. See eg *William Brandt's Sons & Co v Dunlop Rubber Co Ltd* [1905] AC 454. See also *Tolhurst v Associated Portland Cement Manufacturers (1900) Ltd* [1902] 2 KB 660, CA; affd [1903] AC 414.
15. See *William Brandt's Sons & Co v Dunlop Rubber Co* [1905] AC 454; *Performing Right Society Ltd v London Theatre of Varieties Ltd* [1924] AC 1; *Weddell v JA Pearce & Major* [1988] Ch 26; *Baytur SA v Finagro Holding SA* [1992] QB 610 and *Three Rivers District Council v Bank of England* [1996] QB 292; *Hendry v Chart Search Ltd* [1998] CLC 1382 per Evans LJ.
16. See para **6.255**.
17. See *Warner Bros Records Inc v Rollgreen Ltd* [1976] QB 430 at 443 per Roskill LJ and at 445 per Sir John Pennycuick. See also *Herkules Piling Ltd v Tilbury Construction Ltd* (1992) 61 BLR 107. This view has been criticised as placing undue emphasis on the maxim that equity acts in personam, see *Three Rivers District Council v Bank of England* [1996] QB 292 at 302 per Staughton LJ, see also at 314–315 per Peter Gibson LJ.
18. *Anning v Anning* (1907) 4 CLR 1049 at 1058 per Griffiths CJ; *Re Westerton* [1919] 2 Ch 104 at 111 per Sargant J.
19. See Meagher, Gummow and Lehane para 6.520.
20. *Norman v Federal Comr of Taxation* (1962) 109 CLR 9 at 29.
21. See *Three Rivers District Council v Bank of England* [1996] QB 292; *Central Insurance Co Ltd v Seacalf Shipping Corpn, The Aiolos* [1983] 2 Lloyd's Rep 25; *Weddell v JA Pearce & Major* [1988] Ch 26 at 38–39 per Scott J; *Deposit Protection Board v Dalia* [1994] 2 AC 367 at 338 per Sir Michael Fox (revsd on other grounds).
22. *Central Insurance Co Ltd v Seacalf Shipping Corpn, The Aiolos* [1983] 2 Lloyd's Rep 25 at 32 per Oliver LJ. See eg R SC Ord 15 r 6.
23. *Re Rose, Rose v IRC* [1952] Ch 499 at 510–511 per Evershed MR.
24. *Three Rivers District Council v Bank of England* [1996] QB 292 at 304 per Waite LJ.
25. *Three Rivers District Council v Bank of England* [1996] QB 292.
26. *Weddell v JA Pearce & Major* [1988] 1 Ch 26 at 45.
27. See *Performing Right Society Ltd v London Theatre of Varieties Ltd* [1924] AC 1 at 14 per Viscount Cave LC.
28. See *Walter & Sullivan Ltd v J Murphy & Sons Ltd* [1955] 2 QB 584; *Three Rivers District Council v Bank of England* [1996] QB 292. See also *Pt Ltd v Maradona Pty Ltd (No*

1522

*Assignment* 6.274

2) (1992) 27 NSWLR 241 at 248 per Giles J (noting that this is peculiar to the assignment of debts as it is normally not an impediment to a claim of the legal owner that the beneficial ownership is in someone else).

**6.274 Assignments of legal property (assignable at law) in equity** Where there is an intention to make an absolute immediate legal assignment for value which for some reason fails to comply with the legal requirements, there will be an effective assignment in equity when the consideration is paid or executed (assuming the more general requirements for an equitable assignment set out above are complied with)[1]. The consideration which equity requires to uphold such an assignment is, today, the same as that required to support a simple contract[2]. Whether the agreement is of a kind which equity would order specific performance is not relevant[3]. The effect of such an assignment is that the assignor maintains his or her legal interest until steps are taken to complete the legal assignment and an equitable interest is created and vested in the assignee. If the assignor refuses to complete the legal assignment, proceedings may be taken in equity to enforce it. Once the assignee has paid or executed his or her consideration, the assignor holds any relevant property on trust for the assignee[4]. However, the transaction is upheld as an assignment and not as a declaration of trust. The same principles generally apply to an agreement to assign a legal interest where the consideration is executed[5].

Another equitable method of dealing with legal interests is by way of a declaration of trust. A contractual right may be the subject of a declaration of trust[6]. Where the legal holder of property declares that he or she holds that property on trust for the beneficiary, an equitable interest vests in the beneficiary with the legal interest held by the trustee for the benefit of the beneficiary. Other than in the case of land[7], there is no writing requirement for a declaration of trust over a legal interest[8]. A declaration of trust does not require consideration nor need it be communicated to the beneficiary[9] – all that is generally required is for the donor to have the intention to immediately hold the legal interest on trust for the benefit for the donee[10] and for the subject matter to be certain[11].

Certain legal interests may be alienated at law by way of gift. If the legal requirements for a gift of property assignable at law are not made out then the circumstances in which equity will uphold the gift are quite limited. Generally, equity will not assist a volunteer nor perfect an imperfect gift. If, however, there exists an intention to make an immediate assignment as opposed to a mere promise to assign, then if certain requirements are made out equity will recognise the gift of a legal interest and not require valuable consideration. For the gift to be upheld in equity the donor must satisfy the first leg of *Milroy v Lord*[12], that is, he or she must 'have done everything which, according to the nature of the property comprised in the settlement was necessary to be done in order to transfer the property'[13]. The meaning of this phrase has been the subject of much debate over the years[14], however, the better view appears to be that the intended gift will be binding on the conscience of the donor if he or she has done everything necessary for him or her to do to comply with the legal requirements.[15] That is, those things the donor and only the donor can do must

1523